UNITED STATES FIDELITY & GUARANTY COMPANY v. MIMS. WILLIAMS.

[49 South. 742.]

INSURANCE. *Indemnity. Effect of renewal. Employe's faithfulness. Bonds.*

The renewal of a bond guaranteeing an employer against loss through the embezzlement or larceny of an employe is a new bond and not a continuation of the preceding one, and the liability on each bond is for such losses as occur during the time it is operative as fixed by its terms.

FROM the circuit court of Simpson county.

HON. ROBERT L. BULLARD, Judge.

Williams, receiver of the Magee Bank, appellee, was plaintiff in the court below; the Fidelity & Guaranty Company, appellant, was defendant there. From a judgment in plaintiff's favor defendant appealed to the supreme court. The facts are stated in the opinion of the court.

*G. Q. Hall, Hall & Jacobson,* for appellant.

*Alexander & Alexander,* for appellee.

[The briefs of counsel in this case were not to be found when the reporter reached it; hence no synopses of them is given.]

MAYES, J., delivered the opinion of the court.

The declaration in this case substantially alleges that on September 11, 1902, one Fred R. Powell was employed as the cashier of the Magee Bank, and while so employed the United States Fidelity & Guaranty Company, for a valuable consideration, executed and delivered to the Magee Bank a guaranty bond, by which bond the guaranty company obligated itself to reimburse the bank for any pecuniary loss it might sustain by reason of the fraud or dishonesty of Powell, committed while in the discharge of the duties of his position and amounting to embezzlement or larceny, and also committed during the continuance of the term of one year ending October 1, 1903, or any renewal thereof, or within six months from the death or dismissal or retirement of Powell from the service of the bank within the period of the bond, whichever of these events first happened; the total liability of the guaranty company under the bond as first issued, or under any renewal thereof, not to exceed the sum of $10,000. The declaration further alleges that for a valuable consideration and at the first expiration of the original bond, on October 1, 1903, there were successive renewals at the expiration

of each year throughout the entire time that Powell was acting as cashier for the Magee Bank; the last one being from October 1, 1907, to October 1, 1908. The renewal certificates are all made exhibits to the declaration. All of the renewals are in identically the same language, and are as follows: "In consideration of the sum of fifty dollars, the United States Fidelity & Guaranty Company hereby continues in force bond No. 122,437, in the sum of ten thousand dollars, on behalf of Fred R. Powell, in favor of Magee Bank, Magee, Mississippi, for the period beginning the 1st day of —————, and ending on the 1st day of —————, subject to all the covenants and conditions of said original bond heretofore issued on the 1st day of October, 1902."

The declaration further alleges that at various times between the 1st day of October, 1906, and the suspension of the bank and appointment of the plaintiff as receiver, the Magee Bank lost large sums of money by reason of the fraud and dishonesty of Powell amounting to embezzlement or larceny, which losses occurred while Powell was in the discharge of his duties as cashier of the bank; the losses incurred by the bank on account of Powell's fraud being more than $10,000. It will be seen that the declaration does not allege that the losses occurred "during the continuance of any particular term, or of any renewal thereof, and discovered during said continuance, or of any renewal thereof, or within six months thereafter," though the bond itself provides, as a condition of liability on the part of the guaranty company, "that for the consideration of the premises the company shall, during the term above mentioned, or any subsequent renewal of such term, and subject to the conditions and provisions herein contained, at the expiration of three months next after proof satisfactory to the company, as hereinafter mentioned, make good and reimburse to the said employer such pecuniary loss as may be sustained by the employer by reason of the fraud or dishonesty of the said employe in connection with the duties of his office or position amounting to em-

bezzlement or larceny, and which shall have been committed during the continuance of said term, or of any renewal thereof, and discovered during said continuance, or of any renewal thereof, or within six months thereafter, or within six months from the death or dismissal or retirement of said employe from the service of the employer within the period of this bond, whichever of these events shall first happen; the company's total liability on account of said employe under this bond, or any renewal thereof, not to exceed the sum of $10,000."

It is quite true that the declaration has a general allegation "that the said Powell, while cashier and acting as such, did prior to the 1st day of October, 1907, and during the life of said bond, fraudulently and dishonestly withdraw and take of the funds of the bank," etc.; but there is no specific allegation in the declaration that the acts done were done "during the continuance of said term, or any renewal thereof, and discovered during said continuance, or any renewal thereof, or within six months thereafter," which embraced the period of time fixed by the bond or renewal covering the period when the act was committed. To this declaration a demurrer was interposed, the main ground of which was that the declaration did not show that the losses were within the undertaking of the company; that is to say, that the declaration did not show that the embezzlement or larceny was discovered within six months after the termination of the renewal. The demurrer was overruled, and defendants required to plead, whereupon the parties went to trial, and a peremptory instruction was given to find for the plaintiff, from which judgment an appeal is prosecuted.

We do not deem it necessary to pursue the evidence in the case, or to notice any assignment of error other than the one which brings into review the action of the court in overruling the demurrer. The question presented by the demurrer seems to be well settled on authority. Thus, in Frost on the Law of Guaranty Insurance (2d ed.) p. 99, § 40, wherein are cited many

authorities, it is stated that: "A renewal of a policy of insurance is in a legal sense a new contract. The provisions of policies containing stipulations for renewal of liability are valid, and the courts will effectuate them." In the case of *De Jernette v. Fidelity & Casualty Co.*, 98 Ky. 558, 33 S. W. 828, the bond given was almost identical in language with the bond now in suit in this case, and the court said: "A renewal of the policy constitutes a separate and distinct contract for the period of time covered by such renewal. It is, however, a contract with the same terms and conditions as is evidenced by the bond which is renewed, because the renewal receipt recites that it is renewed 'in accordance with the terms of the bond.' In *Insurance Company v. Walsh*, 54 Ill. 164, 5 Am. Rep. 115, the court said: 'A renewal of a policy is, in effect, a new contract of assurance, and, unless otherwise expressed, on the same terms and conditions as were contained in the original policy.' To the same effect is the case of *Brady v. Insurance Co.*, 11 Mich. 425. The court said: 'We have no doubt that each renewal of the policy was a new contract. Each was upon a new consideration, and was optional with both parties. At the expiration of the year over which the original policy extended, the obligation of the insured was ended, and it was only by the concurrence of the will of both parties that the obligation could be continued.' Such contracts standing as distinct and separate contracts, the rights of the parties must be determined under them as such. A renewal of the bond did not alter, change, limit, or increase the rights of the parties under the bond; nor did such renewal increase or limit the time for the performance of any act which is required to be done by the parties to maintain their rights under the bond. When the bond speaks of acts 'committed during the continuance of said renewal thereof,' it has reference to the bond as one contract and the renewals thereof as another and distinct contract. For the fraud or dishonesty of the employe during the time covered by the bond no recovery could be had under the renewal

·contract, nor will the contract of renewal enable the assured to maintain an action on the bond which had been barred by the lapse of time. . . . The company desired by these provisions to require vigilance on the part of the employer to discover and give notice of the fraud or dishonesty of the employe. It was of the utmost importance that this be done. The company could protect itself to some extent by having such information. It required, and had the right to expect, vigilance on the part of the employer. . . . It is not contended by counsel for appellant that the provisions of the bond limiting the liability of the company are not binding on him; but it is insisted, in effect, that a renewal of the bond in 1893 would have the effect of continuing the liability of the company for acts committed during its continuance or renewal thereof, if the discovery should be made, and notice given thereof, within the time stated. To illustrate: Suppose the fraud and dishonesty of Ramsey on account of which this action was brought had occurred between January 19, 1891, and January 19, 1892, the period covered by the bond, and discovery could be made between January 19, 1893, and January, 1894, the period of the alleged renewal, and notice given of it would be a compliance with the terms of the contract, and the liability of the company would thus be continued. If this be a proper interpretation of the contract, then, had there been ten renewals, the company's liability would continue under them for acts committed during the first year of the guaranty. As heretofore stated, we believe the bond is a distinct contract, and the renewals are separate and distinct contracts, but out of the same terms of the bond. Therefore the liability of the company for an act committed during a given period must be determined by the terms of the contract in force at the time of its commission, and a subsequent renewal does not extend the time for the disclosing of the wrong and the enforcement of a liability of the company therefor." See, also, the cases of *First Nat. Bank of Nashville v. United States Fidelity*

*& Guaranty Co.,* 110 Tenn. 10, 75 S. W. 1076, 100 Am. St. Rep. 765; *Proctor Coal Company v. United States Fidelity & Guaranty Co.* (C. C.) 124 Fed. 424; *Fidelity & Casualty Co. v. Consolidated Nat. Bank,* 71 Fed. 116, 17 C. C. A. 641, and many other authorities cited in Frost on Guaranty Insurance (2d ed.) p. 99, § 40, *et seq.*

These bonds are separate and distinct contracts, and do not constitute a continuing bond, as contended by counsel for appellee. Each bond is liable for such losses, and only such losses, as occur during its separate life, which is fixed by the contract for one year each, and discovered during the continuance or renewal, or within six months after the expiration of the year, but always limiting the right of recovery to losses which actually happen within the life of the particular bond. Since it is our view that the original contract and each of the renewals of same are separate and distinct contracts, and not one continuous contract of guaranty, it follows that the declaration, in order to show liability, must declare on the particular bond or renewal current at the time of the loss, and further allege that the loss was discovered within six months of the expiration of the bond, or, in case the party insured has died, been dismissed, or retired, then within six months from the death, dismissal, or retirement, as the case may be. There is no liability on the part of the insurance company, under the contract here sued on, except upon the conditions here stated, and unless the declaration itself makes out a cause of action a demurrer which challenges its sufficiency on that ground should have been sustained. *Penn Mutual Life Ins. Co. v. Keeton.* 95 Miss. 708, 49 South. 736.

Many other questions are raised in argument, but we do not think they are necessarily involved in the decision of this case, so we forbear to discuss them.

*Reversed and remanded.*