GREEN *v*. UNITED STATES FIDELITY & GUARANTY Co. *et al.*

(*Knoxville.* September Term, 1915.)

1. **PRINCIPAL AND SURETY.** Fidelity bonds. Construction of contract.

Contracts of fidelity insurance are to be likened to contracts of insurance rather than to contracts of personal suretyship, and are to be construed by the same exact rules of the law of insurance, and the language of the bond, being that selected and employed by the insurer issuing it for a consideration, when ambiguous or doubtful, must be given the strongest interpretation in favor of the person indemnified which it will reasonably bear. (*Post, pp.* 121, 122.)

Cases cited and approved: Anderson v. Fitzgerald, 4 H. L. Cas., 484; American Surety Co. v. Pauly, 170 U. S., 133; Railroad v. Fidelity & G. Co., 125 Tenn., 690; Guarantee Co. v. Savings Bank, 183 U. S., 419; Seay v. Georgia Life Ins. Co., 132 Tenn., 673.

2. **PRINCIPAL AND SURETY.** Fidelity bonds. Construction of contract. Embezzlement.

Under a fidelity bond executed by the president of a banking and trust company as principal and a fidelity company as surety to save the bank harmless from any pecuniary loss sustained by reason of the fraud or dishonesty of the principal amounting to embezzlement or larceny, it is not necessary to a recovery that the insured introduce such proof as would convict the principal of the crime of larceny or embezzlement as defined by the criminal law. (*Post, pp.* 122, 123.)

Cases cited and approved: Aetna Indemnity Co. v. Crowe Coal & M. Co., 154 Fed., 545; Champion Ice Mfg. Co. v. Am. Bonding Co., 115 Ky., 863; City Trust, etc. ,Co. v. Lee, 204 Ill., 69; Rankin v. U. S. Fid. & G. Co., 86 Ohio St., 267.

3. PRINCIPAL AND SURETY.    Fidelity bonds.    Renewal contract.    Construction.    Term.

Under a fidelity bond against pecuniary loss from the fraud or dishonesty of the president of a banking and trust company amounting to embezzlement or larceny, issued in 1908, which provided indemnity during the term, and any subsequent renewal of such term by reason of the specified acts "committed during the continuance of such term or any renewal thereof, and discovered during said continuance or any renewal thereof, or within six months thereafter, expressed an intention to protect against losses within the period specified in the bond, and provided that on its execution the insurer should not thereafter be liable under any bond previously issued to the insured, and that on the issuance of any subsequent bond all liability should cease, that only one bond should be in force at one time, unless otherwise stipulated, and which was renewed annually upon an additional consideration, "subject to all the covenants and considerations of the original bond," the renewals constituted separate contracts, and the insured could not recover unless the alleged defaults occurred on some specified date or in some specified period covered by one of such contracts, and discovered within the time limited therefor.    (*Post, pp.* 123-137.)

Cases cited and approved: Fidelity & Cas. Co. v. Consolidated Nat. Bank, 71 Fed., 116; Fidelity Deposit Co. v. Champion, 133 Ky., 74; Hawley v. U. S. Fid. & G. Co., 100 App. Div., 12; Campbell Milk Co. v. U. S. Fid. & G. Co., 161 App. Div., 738.

Cases cited and distinguished: De Jernette v. Fid. & C. Co., 98 Ky., 558; U. S. Fid. & G. Co. v. Williams, 96 Miss., 10; Proctor Coal Co. v. U. S. Fid. & G. Co. (C. C.), 124 Fed., 424; U. S. Fid. & G. Co. v. Citizens' Nat. Bank, 147 Ky., 287; U. S. Fid. & G. Co. v. Shepherds' Home, 163 Ky., 706; First Nat. Bank v. U. S. Fid. & G. Co., 110 Tenn., 10.

4. PRINCIPAL AND SURETY.    Fidelity bonds.    Proofs of loss. Liability.

Under such bond, providing that the insurer at the expiration of three months after satisfactory proof would pay its liability,

Green v. Fidelity & Guaranty Co.

and that on the discovery of any act which might result in a claim the insured should as soon as possible give notice to the insurer in writing, and should within three months after the discovery of the default furnish the insurer reasonable particulars and proofs of the correctness of the claim, and declaring that the bond should be void if the employer failed to give such notice, but not providing that a failure to make proofs of the correctness of the claim should forfeit the bond, the allegation of a claim duly made showed that the complaint as the commencement of the action was filed after the lapse of such three months' period. (*Post, pp.* 137, 138.)

Cases cited and approved: Ins. Co. v. Whitaker, 112 Tenn., 151; Dixon v. State Mut. Ins. Co., 34 Okl., 624.

5.. **PRINCIPAL AND SURETY. Fidelity bonds. Denial of liability. Time to use. Waiver.**
A denial of its liability on its fidelity bond made when notice of a claim was given waived the provision of the bond tending to render the suit premature, if brought before the expiration of three months after proof of loss. (*Post, pp.* 138, 139.)

Cases cited and approved: French v. Fid. & C. Co., 135 Wis., 259; Jennings v. Brotherhood Acc. Co., 44 Colo., 68; Atlantic Horse Ins. Co. v. Nero (Miss.), 66 South., 780.

---

FROM KNOX

---

Appeal from the Chancery Court of Knox County.— R. H. SANSON, Special Chancellor.

D. C. WEBB, HUGH M. TATE, and WRIGHT & JONES, for appellant.

SHIELDS & CATES and JEROME TEMPLETON, for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

The bill of complaint was filed by John W. Green, receiver of the insolvent Knoxville Banking & Trust Company, to recover on a bond executed by W. H. Gass, as principal obligor, and the fidelity company, as surety. The bond in the sum of $10,000 was exacted of Gass to save harmless the bank from any pecuniary loss it might sustain by reason of the fraud or dishonesty of Gass in connection with his duties as president of the indemnified institution.

The original bond was effective for the period of February 1, 1908, to February 1, 1909, and there were executed from year to year by the fidelity company "continuation certificates," the last of which bore date of February 1, 1912, for a period expiring one year from that date. The pertinent provisions of the bond and the certificates of renewal are set out in the body of the opinion.

The bond and the last renewal certificate were made exhibits to the bill of complaint.

Demurrers were filed by the two defendants and sustained by the special chancellor, the grounds of which sufficiently appear in the discussion of the case that follows. The receiver appealed to this court, and has assigned errors.

The dishonesty of Gass, as charged, consisted in his withdrawals of funds while he was practically insolvent, by means of overdrafts made without authority,

which he subsequently covered by notes, not accepted by the bank, and executed for the purpose of concealing the fraudulent character of such withdrawals, and that this was accomplished by reason of his official position.

"All of said funds were in the control of defendant W. H. Gass by virtue of his position as president and were by him fraudulently taken and converted to his own use," and therefore amounted to embezzlement or larceny.

It was alleged that "claim had been made upon, and all notices given to, the defendant fidelity company according to the terms of the bond exhibited."

"The wrongful acts of said Gass complained of, and which resulted in said pecuniary loss, were all discovered within six months after the termination of said Gass' relation with the bank, which termination took place at the end of the last extension period of said bond."

Before passing to a consideration of the various provisions of the bond that are involved in the contentions of the respective parties on the demurrer, we shall advert to the rules of construction applicable to such contracts of fidelity insurance.

It is now well settled that such contracts are to be likened to contracts of insurance; and therefore they are not to be construed by the liberal principles applied to personal suretyship, but by the more exacting rules of the law of insurance. The language of the bond contract is that selected and employed by the fidelity

company issuing it for a consideration, and, when ambiguous or doubtful, must be given the strongest interpretation in favor of the person indemnified which it will reasonably bear. This rule of construction has been adopted both in England and in this country. *Anderson* v. *Fitzgerald*, 4 H, L. Cas., 484; *American Surety Co.* v. *Pauly*, 170 U..S., 133, 18 Sup. Ct., 552, 42 L. Ed., 977; *Railroad* v. *Fidelity & G. Co.*, 125 Tenn., 690, 148 S. W., 671.

However, "this rule cannot be availed of to refine away terms of a contract expressed with · sufficient clearness to convey the plain meaning of the parties." *Guarantee Co.* v. *Mechanics' Savings Bank*, 183 U. S., 419, 22 Sup. Ct., 131, 46 L. Ed., 253; *Seay* v. *Georgia Life Ins. Co.*, 132 Tenn., 673, 179 S. W., 312.

Counsel for the obligor, on one of the grounds of the demurrer, contend that the default of Gass was neither embezzlement nor larceny, and that therefore it may not be held to respond, the contract obligation on its part being to make good "such pecuniary loss as might be sustained by the employer by reason of the fraud or dishonesty of said employee . . . amounting to embezzlement or larceny." For authority counsel refer to the case of *Ætna Indemnity Co.* v. *Crowe Coal & M. Co.*, 154 Fed., 545, 83 C. C. A., 431.

But the decided weight of authority is to the effect that it is not necessary in order to his relief that the employer introduce such proof as would convict the delinquent employee of the crime of larceny or embezfilement as defined in the criminal law. *Champion Ice*

*Mfg. Co.* v. *American Bonding Co.,* 115 Ky., 863, 75
S. W., 197, 103 Am. St. Rep., 356; *City Trust, etc., Co.*
v. *Lee,* 204 Ill., 69, 68 N. E., 485; *Rankin* v. *U. S. Fidelity & G. Co.,* 86 Ohio St., 267, 99 N. E., 314; 19 Cyc.,
518.

The reasoning of these cases, which leads us to adopt
the rule they announce, is: That the parties were not
contracting on the basis of an enforcement of the criminal laws of the State; that, if only indemnity for losses suffered by reason of technical larceny or embezzlement had been intended, that purpose could have
been expressed clearly and in fewer words; that the
words "larceny and embezzlement," in the bond, are
used as generic terms to indicate the dishonesty and
fraudulent breach of any duty or obligation upon the
part of the officer in connection with his duties as president.

We think it manifest that, if the other and narrower
construction were given the bond contract, and if that
fact were understood by the commercial public, fidelity
companies using that form of bond would do very little
business.  It is not unfair to give the bond the meaning assigned it by a majority of the decisions that antedated its issuance.

A point yet more seriously pressed by the counsel of
the obligor is: That the only bond (or renewal) remaining in force covered a period from February 1, 1912,
to February 1, 1913, and that it is not alleged in the
bill that the loss claimed was sustained, or the acts of

Gass out of which such loss arose were committed, within the period so covered.

This involves a consideration of the nature of the contract embodied in the bond and the renewal thereof.

The original bond, issued in 1908, contained the following clauses:

"Now, therefore, this bond witnesseth that for the consideration of the premises the company shall, during the term above mentioned, or any subsequent renewal of such term, and subject to the conditions and provisions herein contained, at the expiration of three months next after proof satisfactory to the company, as hereinafter mentioned, make good and reimburse to the said employer such pecuniary loss as may be sustained by the employer by reason of the fraud or dishonesty of the said employee in connection with the duties of his office or position amounting to embezzlement or larceny, and which shall have been committed during the continuance of said term, or of any renewal thereof, and discovered during said continuance or any renewal thereof, or within six months thereafter, or within six months after the death or dismissal or retirement of said employee from the service of the employer, within the period of this bond, whichever of these events shall first happen; the company's total liability on account of said employee under this bond or any renewal thereof not to exceed the sum of ten thousand ($10,000) dollars. . . .

"Provided, further, that the company shall not be liable under this bond for the amount of any balance that may be found due the employer from the employee, and which may have accrued prior to the date thereof, and which may be discovered within the period of this bond or of any renewal thereof; it being the true intent and meaning of this bond that the company shall be responsible as aforesaid for moneys, securities, or properties diverted from the employer within the period specified in this bond. . . .

"That the company upon execution of this bond shall not thereafter be responsible to the employer under any bond previously issued to the employer on behalf of said employee, and upon the issuance of any bond subsequent hereto upon said employee in favor of said employer all responsibility hereunder shall cease and determine, it being mutually understood that it is the intention of this provision that but one (the last) bond shall be in force at one time, unless otherwise stipulated between the employer and the company."

The last renewal receipt or continuation certificate recited that in consideration of $25 the obligor company continues in force the bond in the sum of $10,000 in behalf of W. H. Gass, president, in favor of Knoxville Banking & Trust Company, for the period beginning the 1st day of February, 1912, and ending on the 1st day of February, 1913, "subject to all convenants and considerations of said original bond."

The contention of the obligor is that the original bond and each renewal thereof, is a separate contract,

and that it was necessary for complainant to allege that the claimed defaults of Gass occurred on some specified date or in some specified period, in order to a determination whether they were covered by any and which of such separate contracts of indemnity, and whether they were discovered within the time limited therefor.

We are of opinion that, if there is not to be found in the instant indemnity contract language providing to the contrary, the bond and the continuation certificate are to be deemed to constitute separate contracts in the sense contended for as above.

At an earlier day fidelity companies issued a bond contract that may have been properly so construed. A case involving such a bond is relied upon by the obligor. *DeJernette* v. *Fidelity & Casualty Co.,* 98 Ky., 558, 33 S. W., 828.. It was there said:

"A renewal of the policy constitutes a separate and distinct contract for the period of time covered by such renewal. It is, however, a contract with the same terms and conditions as is evidenced by the bond which is renewed, because the renewal receipt recites that it is renewed 'in accordance with the tenor of the bond.' . . . Such contracts standing as distinct and separate contracts, the rights of the parties must be determined under them as such. A renewal of the bond did not alter, change, limit, or increase the rights of the parties under the bond, nor did such renewal increase or limit the time for the performance of any act which is required to be done by the parties to maintain their

rights under the bond. When the bond speaks of acts 'committed during the continuance of said term or any renewal thereof,' it has reference to the bond as one contract, and the renewal receipts thereof as another and distinct contract. For the fraud or dishonesty of the employed during the time covered by the bond no recovery could be had under the renewal contract, nor will the contract of renewal enable the assured to maintain an action on the bond which had been barred by the lapse of time.''

The language of the bond in the *De Jernette Case* was:

''Make good and reimburse to the employer . . . by reason of fraud or dishonesty of the employed . . . amounting to embezzlement or larceny which has been committed or discovered during the continuance of said term or any renewal thereof'' —without any provision for such discovery within any number of months thereafter.

Also in the case of *United States Fidelity & G. Co. v. Williams,* 96 Mass., 10, 49 South., 742, a bond issued by the obligor, which is the defendant in this case, was under review in connection with a contention based on a demurrer to the effect that there was no specific averment in the declaration that the acts done were done ''during the continuance of any particular term, or of any renewal thereof, and discovered during said continuance, or of any renewal thereof, or within six months thereafter.'' The court, citing the *De Jer-*

*nette Case,* held with the demurrant's contention that the bonds were separate and distinct contracts, and said:

"Each bond is liable for such losses, and only such losses, as occur during its separate life, which is fixed by the contract for one year each, and discovered during the continuance or renewal, or within six months after the expiration of the year, but always limiting the right of recovery to losses which actually happen within the life of the particular bond. .... The declaration, in order to show liability, must declare on the particular bond or renewal current at the time of the loss, and further allege that the loss was discovered within six months of the expiration of the bond."

See, also, *Fidelity & Casualty Co.* v. *Consolidated Nat. Bank,* 71 Fed., 116, 17 C. C. A., 641; Frost on Guaranty Insurance (2d Ed.), section 40 *et seq.*

In *Proctor Coal Co.* v. *U. S. Fidelity & G. Co.* (C. C.), 124 Fed., 424, Newman, District Judge, said:

"It is urged that certain language in the bond shows that it was intended to be a continuous contract covering the period of the bond or any subsequent renewals. The language referred to is this: 'Make good and reimburse to the employer all and any pecuniary loss sustained by the employer,' etc., 'occurring during the continuance of this bond or any renewals thereof, and discovered during said continuance, or within six months thereafter.' I am unable to agree with the argument of plaintiff as to the proper construction to be put on this language. I think it should be construed

so as to read in this way: 'Occurring during the continuance of this bond or any renewal thereof, and discovered during the continuance of this bond, or during the continuance of any renewal'—that is, that the discovery must be within six months of the expiration of the original bond, or within six months of the expiration of any renewal thereof''—citing the *De Jernette Case.*

However, in a later case (*U. S. Fidelity & G. Co.* v. *Citizens' Nat. Bank,* 147 Ky., 287, 143 S. W., 998) the court of appeals of Kentucky had before it a case based on a bond issued by the same obligor in 1904, and the court responded to a contention of the obligor, as appellant, that the bond and the renewal certificate constituted separate contracts, and that therefore the indemnified bank must allege the loss occurring under each of them, and that the rights of the parties should be determined as to rules of notice and time of action in accordance with this theory. It was said:

''Appellant refers to the case of *De Jernette* v. *Fidelity & Casualty Co.,* 98 Ky., 558, 33 S. W., 828. This court did hold that the bond and renewals in that case were separate contracts, but upon a close examination of the facts of that case and those in the case at bar a difference will be found. It is reasonable to presume that because of the construction placed upon the contract in the De Jernette Case that portion of the public wanting indemnity insurance required a different contract, as it seldom occurs that embezzlement or

larceny is detected within three, six, or twelve months after committed, especially if the employee has been in the service of his employer for some time and is trusted by him and is shrewd. Therefore, in order to obtain business, the indemnity and guaranty companies gave them a contract which would protect them.

"As stated, the bond in question was issued March 15, 1904, and the bank paid the premium, $45 at that time. Appellant agreed in the bond to indemnify the bank in the sum of $15,000 against any loss it might sustain at the hands of its cashier by any acts of his which amounted to embezzlement or larceny, for the term of twelve months, provided his wrong doing was discovered within six months from the time the contract expired. If the bond and four renewal certificates contained only these stipulations, then appellant's contention is correct, and the case would be governed by the De Jernette Case, but we are of the opinion that the facts of this case show that the parties intended that the bond and four continuation certificates should constitute one continuous contract. In the original bond this language is used:

"The company shall, during the term above mentioned or any subsequent renewal of such term, . . . make good and reimburse to the said employer, said pecuniary loss as may be sustained by the employer by reason of the fraud or dishonesty of the said employee in connection with the duties of his office or position, amounting to embezzlement or larceny, and which shall have been committed during the continu-

ance of said term or any renewal thereof, and discovered during said continuance or any renewal thereof, or within six months thereafter.'

"Similar language is used throughout the bond, and we are unable to understand why. If the bond was intended by the parties to have no connection with any other, why was this language used? For what was it inserted? It appears from this language that appellant was obligating itself in the sum of $15,000 to pay the bank for any embezzlement or larceny committed by its cashier, not only from March 15, 1904, to March 15, 1905, but to any period that might be fixed by any renewal of the contract."

In the still later case, *U. S. Fidelity & G. Co.* v. *Shepherds' Home,* 163 Ky., 706, 174 S. W., 487, the court dealt with a bond executed in 1909. The effect of the obligor was to limit recovery to that part of the shortage occurring during the last year. The court reaffirmed the holding that the bond was a continuing obligation; the renewals operating to continue a single indemnifying contract which "covered the period of consecutive years over which the renewals were issued." The court laid particular stress upon the following language in the bond:

"Which shall have been committed during the continuance of said term, or any renewal thereof, and discovered during said continuance or within three months thereafter."

In *Rankin* v. *U. S. Fidelity & G. Co.,* supra, the supreme court of Ohio passed upon a bond executed by

the same obligor and upon a contention of its counsel that the action could not be maintained because the time limited by the terms of the contract for the discovery of the defaults of the employee had been exceeded. The acts of defalcation occurred within the period covered by the original bond, and they were not discovered until more than six months after the date of expiration of that period. The court said:

"It is entirely clear that, if the question involved a consideration alone of the terms of the original bond, the time limited for the discovery has been exceeded. But the terms of the original bond show that, when it was executed, a renewal or continuation thereof was contemplated and an instrument was executed whereby the company continued in force 'the original bond subject to its covenants and conditions until February 5, 1905.' It is obvious that these instruments are to be construed together, not only because they relate to the same subject-matter, but because each in terms refers to the other. On this point counsel are agreed. In favor of the obligee it is insisted that the instruments thus construed are, in legal effect, the same as though the original bond had been executed for two years instead of one, and that this view must determine all questions respecting the rights and liabilities of the parties, so that the company shall be liable for a single penalty, and there is a continuance for a year of the period in which Spear's default might create a liability for that penalty, as well as for the time of its discovery.

Green v. Fidelity & Guaranty Co.

''In favor of the obligor it is insisted that, however it would be as to other questions which might arise, there should, with respect to the question presented, be such construction as would be required by an express stipulation that, notwithstanding the continuance, a liability on account of a default occurring within the first year should be conditioned upon the discovery of that default within six months after the end of that year. There being no such express stipulation, we have to inquire whether it is implied in the natural meaning of the words used and their grammatical and logical relation. It might be conjectured that the parties regarded the word 'renew,' used in the first instrument, as synonymous with the word 'continue,' used in the second. But there need be no resort to conjecture, since what the parties did in the second instrument was 'to continue in force the former instrument for the period beginning the 5th day of February, 1904, and ending on the 5th day of February, 1905, subject to all the covenants and conditions of said original bond.' By the material stipulations of the original bond the obligor undertook to make good any loss which the obligee might sustain by reason of the fraud or dishonesty of its cashier 'committed during the continuance of said term or any renewal thereof and discovered during said continuance or any renewal thereof, or within six months thereafter.' Here are no words of severalty or discrimination respecting the time of the discovery, and since it would not be within the proper function of interpretation to supply such

words, the terms of the stipulation must be regarded as within the same construction. This view is enforced by the consideration that the term during whose continuance a default was contemplated by the original instrument is the term which was continued by the express terms of the second. No terms are used to suggest that any difference in the relation of the parties was intended by the second instrument than such as would have existed if the original bond had been for two years. It is conceivable that, if this question had been anticipated by the parties at the time of the execution of these instruments, clearer terms would have been used to express their intention with respect to it. But certainly, in view of their stipulations, nothing more favorable to the obligor can be concluded than that an interpretation against it is doubtful."

We have made ample quotation from the above decisions because of the contrariety in the judicial construction of the contracts, and because of the importance of the question, due to the increasing use of fidelity companies as sureties on bonds. It is observed that, while the Kentucky court seeks to distinguish the *De Jernette Case* from the later cases, the Mississippi court conceives that its principles are applicable to the new form of bond to which the Kentucky court denies that it is applicable.

The fact that the courts have thus arrived at variant conclusions may be attributable in part to the difference in the wording of the several contract clauses; but, so far as this is not the case, there is by the very

fact of such variance in views a demonstration of the doubtful meaning of the paragraph of the bond.

The argument of the supreme court of Ohio in the *Rankin Case* shows quite clearly that the obligor has, to say the least, used language that is doubtful as to its true meaning. Certain it is that indemnity to the obligee was in the contemplation of both parties, and room is left for the employment of the rule of construction above referred to—the resolving of substantial doubts in favor of the one assured or indemnified. It may be that the obligor, in the competition with other fidelity companies for business, sought to make its bond contracts attractive by the use of the terms so used, tending to make the contracts continuous in character.

The provisions, when so construed, would have the practical effect to hold the obligee as a patron, by way of renewals. If the bank in this instance had taken out a new bond with a rival fidelity company, at the expiration of the original bond, it would not have been as amply protected. In order to persuade it to a continuance, the obligor held out an accumulating advantage in the provision that discovery of a past delinquency "during said continuance or any renewal thereof," properly proven, would fix liability on the part of the obligor. As stated above, but for the use of the particular terminology, or its equivalent, a fidelity bond and a renewal by annual payments would seem to be separate obligations.

The case of *First Nat. Bank* v. *U. S. Fidelity & G. Co.*, 110 Tenn., 10, 24, 75 S. W., 1076, 1080, 100 Am. St. Rep., 765, 773, as we construe it, did not pass on this particular phase of the contract embodied in the bond, but what was there said was directed against a holding by the court of chancery appeals to the effect that the obligations were so far separate and independent that two penalties aggregating $14,000 might be recovered, though the original bond stipulated for indemnity to the extent of $7,000. This court ruled:

"So that, under the plain terms of the bond, the maximum liability is $7,000, and no further, whether the default occurred during the currency of the original bond or during the renewal thereof."

We think that this case has been misunderstood so far as it is cited in support of the surety company's present contention.

All of the cases above cited are in accord in holding that only one penalty is recoverable. See, also, *Fidelity Deposit Co.* v. *Champion,* 133 Ky., 74, 117 S. W., 393. However, the New York courts hold that separate obligations are created by the original bond and the continuation or renewal certificate, and so far so that two penalties may be recovered. *Hawley* v. *U. S. Fidelity & G. Co.,* 100 App. Div., 12, 90 N. Y. Supp., 893, affirmed 184 N. Y., 549, 76 N. E., 1096; *Campbell Milk Co.* v. *U. S. Fidelity & G. Co.,* 161 App. Div., 738, 146 N. Y. Supp., 92. We think the bond is specific in its provisions that but one penalty shall accrue.

Green v. Fidelity & Guaranty Co.

In some senses the renewal effected by the continuation certificate is a new or "separate" contract. This it may be without being "independent." It is requisite that the minds of the original parties meet again in assent to the extension of the contractual relation over the new period; and it depends upon the payment of a distinct consideration. But those facts have not been deemed sufficient to make the payment of two penalties obligatory as upon distinct contracts. Neither, in our opinion, do they give occasion, necessarily, to the obligations being treated as independent in the matter of fixing the period for discovery in order to liability. The original bond incorporates terms that project it forward to cover the renewal period, without separating the periods for discovery purposes. The reason in our view, is the purpose on the part of the company to hold the indemnified person to persistence as a patron. In another field of insurance a cumulative feature appears; frequently in accident insurance the recoverable sum is made to be an augmenting quantity from year to year, for quite a period, provided the policy is kept renewed by the payment of continuation premiums.

The next question for determination arises on the following provisions of the bond:

"The company shall . . . at the expiration of three months next after proof satisfactory to the company, as hereinafter mentioned, make good, etc. . . .

"Provided, that on the discovery of any act capable of giving rise to a claim hereunder the employer shall,

at the earliest practicable moment, give notice thereof to the company, and any claim made under this bond shall be in writing addressed to the company at its head office in the city of Baltimore, and shall within three months after the discovery thereof, at the employer's expense, furnish to the company reasonable particulars and proofs of the correctness of said claim."

It is not specifically alleged that any proofs of the claim of loss were made, and the obligor's contract provision to reimburse was conditioned on the expiration of three months following the making of such proofs of the correctness of the claim. It is therefore contended that it is not made to appear that the bill of complaint, as the commencement of the action, was filed after the lapse of such three months period.

It is provided that the bond shall become void, as to any claim under it, if the employer shall fail to give notice to obligor, but no provision is inserted that a failure thereafter to make proofs of the correctness of the claim shall have the effect to forfeit the bond as regards that claim. It seems, therefore, that, as a claim is alleged to have been duly made, the contention of the obligor company is not maintainable. *Insurance Co.* v. *Whitaker,* 112 Tenn., 151, 79 S. W., 119, 64 L. R. A., 451, 105 Am. St. Rep., 916, and annotation of case of *Dixon* v. *State Mut. Ins. Co.,* 34 Okl., 624, 126 Pac., 794, L. R. A., 1915F, 1213.

It is furthermore alleged that when notice of the claim was given, a denial of liability on the bond was

Green v. Fidelity & Guaranty Co.

made by the company, thus waiving the provision tending to render the suit premature if brought before the expiration of three months after proofs of loss. *French* v. *Fidelity & C. Co.,* 135 Wis., 259, 115 N. W. 869, 17 L. R. A. (N. S.), 1011; *Jennings* v. *Brotherhood Accident Co.,* 44 Colo., 68, 96 Pac., 982, 18 L. R. A. (N. S.), 109, 130 Am. St. Rep., 109; *Atlantic Horse Ins. Co.* v. *Nero* (Miss.), 66 South., 780.

Without discussing here in detail the other grounds of the demurrer, we are of opinion that the defendants were put to their answers. Reversed, with remand. Costs of the appeal will be paid by appellees.