FOURTH & FIRST BANK & TRUST CO. *v.* FIDELITY & DE-
POSIT CO. OF MARYLAND.*

(*Nashville.* December Term, 1925.)

1. **INSURANCE.** Each premium of indemnity bond, written to cover indefinite period at pleasure of parties, is part consideration of entire risk.

Where indemnity bond is written to cover an indefinite period at pleasure of parties, each premium, the first premium and subsequent premiums, is part consideration of the entire risk, (*Post*, *pp.* 182-185.)

Cases cited and approved: Ins. Co. v. Heidel, 76 Tenn., 488; New York Life Ins. Co. v. Statham, 93 U. S., 24; First Nat. Bank v. U. S. Fid. & Guar. Co., 110 Tenn., 10; Green v. Fid. & Guar. Co., 135 Tenn,, 117; Campbell Milk Co. v. Fid., etc., Co., 146 N. Y. S., 92; Hawley v. U. S. Fid., etc., Co., 90 N. Y. S., 893; De Jernette v. Fidelity, etc., Co., 98 Ky., 558; Long Bros. v. U. S. Fid., etc., Co., 100 Mo. App., 421; Proctor Coal Co. v. U. S. Fid. Co., 124 F., 424; Commercial Bank v. Am. Bonding Co., 194 Mo. App., 224; W. S. Fid., etc., Co. v. Williams, 96 Miss., 10; Solvency Mut. Guarantee Co. v. York et al., 3 H. & N., 587; Dale v. Continental Ins. Co., 95 Tenn., 38; Equitable Ins. Co. v. Harvey, 98 Tenn., 636; Woodfin v. Asheville Mut. Ins. Co., 51 N. C., 558; Haas v. Mutual L. Ins. Co., 84 Neb., 682.

Case cited and distinguished: Ladies Modern Maccabees v. Ill. Surety Co., 196 Mich., 27.

2. **INSURANCE.** Annual premium of indemnity bond, continuing until terminated by one of parties, is to be enforced as part of consideration and not as condition.

Where an indemnity bond was by its terms to run until notice to terminate was given by one party or the other, the annual premium is to be enforced as part of consideration and not as a condition. (*Post*, *pp.* 185, 186.)

3. **INSURANCE.** Obligation of indemnity bond, providing for its continuance until notice of termination by one of parties, held to be continuous and single, and each renewal did not constitute a separate bond.

Where indemnity bond was, by its terms, to continue until notice to terminate was given by one of parties, and contained no clause by which its obligation was void or suspended by failure to pay annual premium, no new assent or affirmative action of either party was required to keep contract in force, and, even on failure to pay annual premium, contract ran until affirmative action was taken to avoid it, and hence obligation of the bond was continuous and single, and each renewal of it did not constitute a separate bond. (*Post, pp.* 186, 188.)

Case cited and approved: State ex rel. v. New Amsterdam Cas. Co., 110 Okl., 23.

4. **INTEREST.**

The matter of interest is within the chancellor's discretion. (*Post, p.* 188.)

CHAMBLISS, J., dissenting.

Case cited and approved: Tenn. Fertilizer Co. v. International Agr. Corp., 146 Tenn., 451.

---

*Headnotes 1. Fidelity Insurance, 25 C. J., Section 6 (Anno); 2. Fidelity Insurance, 25 C. J., 6 (Anno); 3. Fidelity Insurance, 25 C. J., Section 16; 4. Fidelity Insurance, 25 C. J., Section 32 (Anno); Interest, 33 C. J., Section 199 (Anno).

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —HON. JOHN R. AUST, Chancellor.

JOHN J. VERTREES, W. L. GRANBERY and WM. O. VERTREES, for appellant.

BASS, BERRY & SIMS, for appellee.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

The Fourth & First National Bank and the First Savings Bank & Trust Company were allied institutions in Nashville. The name of the latter was changed to Fourth & First Savings Bank & Trust Company prior to the institution of this suit.

In addition to its principal place of business, the Fourth & First Bank & Trust Company maintained several branches in the city and suburbs. Drew Rowen was manager of the branch bank at the Powder Plant. During the period from January, 1920, to June, 1924, Rowen embezzled $151,943.65 of the bank's funds. Subsequently $1,426.40 was recovered out of the assets of Rowen, making the net loss of the bank on his account during these years $150,517.25.

On December 31, 1919, the defendant issued to the Fourth & First National Bank and to the First Savings Bank & Trust Company (the predecessor of complainant) a blanket bond by way of protection against dishonesty of all the employees of the two banks. The material provisions of this bond are as follows:

"In consideration of the premium of twenty-six hundred nine and 50/100 dollars ($2,609.50) paid by Fourth & First National Bank and First Savings Bank & Trust Company, as their interests may appear, Nashville, hereinafter referred to as the insured to the Fidelity & Deposit Company of Maryland, hereinafter referred to as the underwriter, for a period of one year from the date

hereof, and of subsequent annual premiums, each premium being based upon the total number of the insured's officers, clerks and other employees, employed at the insured's offices covered hereunder at the beginning of the year for which such premium is paid (all the officers, clerks, and other employees employed at the offices covered hereunder during the currency of this bond being hereinafter referred to as employees), the underwriter hereby undertakes and agrees to indemnify the insured and hold it harmless from and against any loss, to any amount not exceeding fifty thousand dollars ($50,000), of money, currency, bullion, bonds, debentures, script, certificates, warrants, transfers, coupons, bills of exchange, promissory notes, checks, or other similar securities, hereinafter referred to as property, in which the insured has a pecuniary interest or for which it is legally liable, sustained by the insured subsequent to noon of the date hereof and while this bond is in force and discovered by the insured subsequent to noon of the date hereof and prior to the expiration of twelve months after the termination of this bond as provided in condition 11.''

''11.   This bond shall terminate—(a) thirty days after the receipt by the insured of a written notice from the underwriter of its desire to terminate this bond, or (b) upon the receipt by the underwriter of a written request from the insured to terminate this bond.  This bond shall terminate as to any employee—(a) as soon as the insured shall learn of any default hereunder committed by such employee, or (b) fifteen days after the receipt by the insured of a written notice from the underwriter of its desire to terminate this bond as such employee.''

Rowen so manipulated the books of the complainant bank that he was able to conceal his defalcations until June, 1924. Upon the discovery of his misappropriations at that time, notice was promptly given to the defendant company.

Investigation disclosed that Rowen's abstractions were distributed as below:

| | |
|---|---|
| 1920 | $15,290.04 |
| 1921 | 25,154.61 |
| 1922 | 35,265.22 |
| 1923 | 34,119.69 |
| 1924 | 34,250.53 |
| Not placed | 7,863.56 |

The bond issued December 31, 1919, was continued in force until December 31, 1923. Annual premiums were paid upon this bond. It thus covered the years 1920, 1921, 1922, and 1923. On December 31, 1923, the existing bond was superseded by a new bond in a like sum —$50,000. In addition to these two bonds, defendant company issued to the banks excess bonds which ran contemporaneously with the primary bonds. There is no controversy with respect to the obligations of these excess bonds, and they need not be further noticed.

Defendant company takes the position that the primary bond issued December 31, 1919, was a continuous bond in the sum of $50,000, covering the whole period of its currency, and that the obligor's maximum liability for the period December 31, 1919-December 31, 1923, was $50,000. Defendant conceded liability under the new primary bond dated December 31, 1923, for the loss occurring in 1924. It also conceded liability for the unplaced loss of $7,863.56, and for a further sum of $5,628.77 un-

der the excess bonds. Defendant therefore admitted liability for $97,742.86. It paid to the bank the sum of $100,-000, upon stipulation that such payment should not affect the rights of either party.

The contention of the bank is that the original bond issued December 31, 1919, was intended to cover losses sustained during the year 1920; that said bond was renewed for the year 1921, for the year 1922, and for the year 1923; that the original bond and each renewal thereof was a separate contract, each contract covering a year, and that defendant is liable as upon four distinct obligations. The bank was able, as appears from the statement above set out, to fix the amount of each year's loss. This is true except as to the item of $7,863.56, about which there is no dispute; it apparently being an admitted charge against one of the excess bonds.

The bank accordingly filed its bill to recover the sum of $50,517.25, the amount of Rowen's shortage, less $100,000 paid by defendant company. The chancellor dismissed the bill, and the bank has appealed.

Counsel for the bank submitted the case with the following observation:

"If there was but one bond for $50,000 in force for one term, beginning December 31, 1919, and ending December 31, 1923, the decree of the chancellor should be affirmed; but if, in legal effect, there were four bonds for $50,000 each, in force for one year each, the primary bond, and the three renewals for the years, respectively, for which the renewal premiums were paid, the complainant is entitled to a decree for $50,317.25, the balance in controversy, with interest from the day the bill was filed."

The substance of the first paragraph of the bond under consideration, above quoted, is that, in consideration of the premium of $2,609.50 for a period of one year from date and of subsequent annual premiums (based on the number of employees at the beginning of the year for which premium is paid), obligor undertakes to indemnify the obligee against loss to an amount not exceeding $50,000, sustained by the obligee subsequent to the date of the bond, and while the bond is in force and discovered by the obligee subsequent to the date of the bond, and prior to twelve months after termination of the bond as provided in condition 11. Condition 11 provides that the obligee may terminate the bond upon notice and the obligor may terminate the bond upon thirty days' notice.

The consideration of the bond is the first annual premium of $2,609.50, and subsequent annual premiums, based on the number of employees. The obligation of the bond is to indemnify against loss of money, etc., up to $50,000. The life of the bond, the period it covers, is not fixed. It is to run until terminated as provided in condition 11.

The bond before us in some aspects resembles a life insurance policy. A life insurance policy is not an assurance for a single year, with the privilege of renewal from year to year by paying the annual premium, but it is an entire contract of assurance for life. Each premium is part consideration of the entire insurance for life. *Ins. Co.* v. *Heidel,* 8 Lea (76 Tenn.), 488; *New York Life Ins. Co.* v. *Statham,* 93 U. S., 24, 23 L. Ed., 789.

So this bond is written to cover an indefinite period at the pleasure of the parties. Each premium, the first

premium and subsequent premiums, is part consideration of the entire risk.

Neither *First National Bank* v. *United States Fidelity & Guaranty Co.*, 75 S. W., 1076, 110 Tenn., 10, 100 Am. St. Rep., 765, nor *Green* v. *Fidelity & Guaranty Co.*, 185 S. W., 726, 135 Tenn., 117, controls the case here presented. In the former case it was held that, owing to the particular language of the bond used, although the original bond and the renewals be treated as separate contracts, still there could be only one recovery of the maximum liability stipulated. In the latter case, although the original bond was effective for a fixed period of one year, and there was a continuation certificate issued each year, still it was held that the original bond and the renewals did not constitute separate contracts so as to require the obligee to allocate its losses to particular years.

Learned counsel for the bank presses upon our consideration a line of cases wherein it appears that indemnity bonds and renewals thereof were under consideration. It was held in these cases that the bonds and the renewals were separate and distinct contracts. This was necessarily so under the language used. The cases are *Campbell Milk Co.* v. *Fidelity, etc., Co.*, 146 N. Y. S., 92, 161 App. Div., 738; *Hawley* v. *U. S. Fidelity, etc. Co.*, 90 N. Y. S., 893, 100 App. Div., 12; *Id.*, 76 N. E., 1096, 184 N. Y., 549; *De Jernette* v. *Fidelity, etc., Co.*, 33 S. W., 828, 98 Ky., 558, 17 Ky. Law Rep., 1088; *Long Bros.* v. *U. S. Fidelity, etc., Co.*, 110 S. W., 29, 100 Mo. App., 421; *Proctor Coal Company* v. *U. S. Fidelity Co.* (C. C.), 124 F., 424, 427, 430; *Ladies Modern Maccabees* v. *Ill. Surety Co.*, 163 N. W., 7, 196 Mich., 27; *Commercial Bank* v. *Am. Bonding Co.*, 187 S. W., 99, 194 Mo. App., 224; *U.*

*S. Fidelity, etc., Co.* v. *Williams,* 49 So. 742, 96 Miss., 10, 14.

In all these cases the original bond covered a specified period, usually one year. All the bonds under consideration provided for their extension of continuance for other years upon the payment of subsequent annual premiums. The reasoning of these cases may be illustrated by the following from the supreme court of Michigan in *Ladies Modern Maccabees* v. *Ill. Surety Co.,* supra:

"Under the stipulations of the bond in the instant case, the renewal did not automatically take place. The plaintiff had to apply for, and the defendant accept, a continuance of the obligation. Neither could compel action on the part of the other. When the plaintiff applied for, and the defendant accepted, the application, both parties became bound for a new term. It was a new contract; its conditions were the same as the original bond, but it covered a new period, was for a new consideration, and sprang into existence by the affirmative action of both parties."

No affirmative action was required by either party to the bond before us to continue it after the first year, or after any other year. The original obligation was not limited to a year. At the end of the first year the bond went on, whether the premium was paid or not. The bank became liable for the premium for the second year, because it was stipulated that premiums were to be paid annually, and defendant's obligation to indemnify against losses continued. If neither party availed itself of the right to terminate afforded by condition 11, the bond ran

right along, until other steps were taken to escape its obligation, as by rescission for default in performance.

In a policy of guaranty insurance, it was provided that, upon the expiration of the original term, the contract should be treated as renewed in the absence of notice from either party. It was held, no notice being given, that the contract was continued for another like term and the insured was liable for the premium. *Solvency Mutual Guarantee Co.* v. *York et al.,* 3 H. & N., 587, 157 Eng. Reprint, 603. Surely then, where a policy is not limited to any term but on its face is to run until notice to terminate is given by one party or the other, it must be that the contract persists and the respective liabilities continue up to such notice. The bond contains no clause by which its obligation is avoided or even suspended by the failure of the obligee to pay an annual premium. Such consequences result from contract. *Dale* v. *Continental Ins. Co.,* 31 S. W., 266, 95 Tenn., 38; *Equitable Ins. Co.* v. *Harvey,* 40 S. W., 1092, 98 Tenn., 636.

It is an established rule of law that a valid contract of life insurance is not invalidated and nullified by the non-payment of a premium required to be paid, unless the policy contains a provision to such effect. *Woodfin* v. *Asheville Mut. Ins. Co.,* 51 N. C., 558; *Haas* v. *Mutual L. Ins. Co.,* 121 N. W., 996, 84 Neb., 682, 26 L. R. A. (N. S.), 747, 19 Ann. Cas., 58; notes, 16 L. R. A. (N. S.), 747, 19 Ann. Cas., 67, 14 R. C. L., 975; May on Insurance, section 343.

As suggested by the North Carolina court in *Woodfin* v. *Ashville Mut. Ins. Co.,* supra, in a contract such as the one before us, the payment of the annual premium is

to be enforced as part of the consideration, not as a condition.

Such being the law, and such being the bond, it did not require a new assent or affirmative action of either party to keep the contract in force, but, even on a failure to pay an annual premium, the contract ran on until affirmative action was taken to avoid it. The obligation of the bond was therefore continuous and single.

The conclusion we have reached finds support in *State ex rel.* v. *New Amsterdam Casualty Co.*, 236 P., 603, 110 Okl., 23, construing a bond somewhat similar to the one before us, in which the supreme court of Oklahoma distinguished some of the cases relied on herein by the bank.

As suggested by Mr. Justice WILLIAMS in *Green* v. *Fidelity & Guaranty Co.*, supra, bonds like this one represent progress in the business of indemnity insurance. They extend the time for discovery of loss, and remove the difficulty, fatal to so many cases, experienced by the obligee in proving when the defalcation occurred and against what period or separate contract it should be charged.

A construction of the bond to avoid this burden upon the obligee is the strongest construction we could give to it, generally speaking, against the bonding company. Such a construction will usually favor the obligee, as an examination of the decided cases will disclose. The defendant, it appears, has done business in Tennessee for many years, and doubtless has outstanding many bonds of like tenor. There should be uniformity of interpretation of these contracts. In applying the rule that a policy or bond prepared by an insurer should be construed against it, where the meaning of the language is

doubtful, we should not look alone to the exigencies of a particular plaintiff, where the bond or policy is in common use. However, in this instance we do not think there is any grave uncertainty in the terms employed.

It is insisted that, under the construction given to the bond by the chancellor, which we are following, the bank during the fourth year of the bond was paying a large premium for no indemnity. It is said that the defalcations of the three previous years in their aggregate exceeded $50,000, that the bank had paid for coverage for these years, and that for the last year it got no protection at all for the premium paid, if its total recovery was limited to $50,000. This argument ignores the feature of this bond, previously pointed out, that, as in a life policy, "the whole premiums are balanced against the whole insurance." *N. Y. Life Ins. Co.* v. *Statham*, supra. In 1923 this bond stood as indemnity for losses of the three past years as well as current losses.

If the obligations of this bond be considered as recurring annually, its conditions should be likewise treated. If there were distinct contracts of indemnity, each covering a year, then each contract terminated at the year's end, and, under the provisions of the bond, any loss was required to be discovered and reported "prior to the expiration of twelve months after the termination of this bond;" that is to say, all liability for 1920 losses ceased at the end of 1921. So, according to the bank's own theory, the 1920 premium only purchased protection for the losses of that year up to the end of 1921. The bank therefore did not, in 1920, pay for the protection it got in 1923 against the losses of the former year. It was not paying something for nothing in the last year,

even though it developed that the first year's losses absorbed the entire penalty of the bond. On the contrary, in 1923, it was paying for past protection as well as current and future protection.

Such discussion, however, is adventitious. The plain meaning of a contract, fairly negotiated, cannot be set aside, because perchance that contract does not work out to the profit of both parties.

The matter of interest was within the discretion of the chancellor. *Tennessee Fertilizer Co.* v. *International Agr. Corp.*, 243 S. W., 81, 146 Tenn., 451.

Other propositions are advanced by counsel on either side which we do not find it necessary to consider.

We are of opinion that the chancellor correctly decided the case, and his decree will be affirmed. Costs below will remain as taxed by the chancellor. The bank will pay the costs of this court.

CHAMBLISS, J., dissents.