STATE *v.* CONTINENTAL ASSUR. CO.*

(*Nashville,* December Term, 1939.)

Opinion filed March 2, 1940.

Rehearing denied April 6, 1940.

---

*Appeal dismissed, 311 U. S. 5, 85 L. Ed. —, 61 S. Ct. 1.

(1)

CORNELIUS, McKINNEY & GILBERT and J. H. BALLEW, all of Nashville, for complainant.

TRABUE, HUME, DAVIS & GALE and REBER BOULT, all of Nashville, for defendant.

MR. JUSTICE COOK delivered the opinion of the Court.

Statutes re-enacted by Code sections 6118, 6120, and 6122, in force when defendant qualified to do an insurance business in the State, provide:

Section 6118—

"Each foreign insurance company doing business under the provisions of this article, shall, in January and July of each year, report, under oath of the president and secretary, or other chief officer of such company, to the commissioner, the total amount of gross premiums received in this state within the six months next preceding the first of January and July, or since the last return of such premiums were made by such company; and shall, at the same time, pay into the treasury of the state the sum of two dollars and fifty cents upon each one hundred dollars of said gross premiums so ascertained, which shall be in lieu of all other taxes. . . ."

Section 6120—

"All foreign insurance companies, which shall take out or renew a license to transact business in this state, shall, upon the expiration of their licenses for any cause, or upon their ceasing to transact new business in this state, continue to pay the same tax upon their business remaining in force in this state, and in like manner, and at like times, as other insurance companies of the same class, which are duly licensed, are required to pay by any current law in force at such time."

Section 6122—

"A compliance with the provisions of the last two sections shall be a condition upon which any foreign insur-

ance company shall be authorized to obtain or renew a license, and the acceptance of these terms or conditions shall be conclusively presumed from the taking out or the renewing of such license.''

The defendant company applied for and was granting a license to do a life insurance business in the State in 1926, and withdrew in 1931, leaving unmatured policies on which premiums were sent by the persons insured to the company's office in Chicago, Illinois. The bill was filed to enforce payment of the tax on premiums for policies issued while the company was in the State, but upon which premiums were paid after its withdrawal.

The defendant insists that after it withdrew from the State it was not subject to payment of the tax on policies it had issued while in the State, and that the imposition of the privilege tax on premium receipts after withdrawal from the State is a tax on business done outside the State and is violative of the due process clause of the Fourteenth Amendment to the Constitution of the United States. This insistence was presented first by a plea in abatement which challenged the right of the State to obtain jurisdiction by service of process on the insurance commissioner. That defense arises from defendant's insistence that the claim for taxes by the State is not valid and therefore not enforceable by exercise of the jurisdiction acquired under the power of attorney executed by defendant authorizing the insurance commissioner to accept service of process after withdrawal from the State in cases for liability contracted before withdrawal.

The chancellor dismissed the plea in abatement and defendant demurred. It insists through the demurrer that the imposition of the tax on premiums received

after withdrawal from the State is violative of rights assured by the Fourteenth Amendment to the Federal Constitution and especially the due process clause thereof, and that the State could not, as attempted by Code, section 6122, deprive defendant of such rights.

■ The State may prescribe the terms upon which foreign corporations are domesticated. It may exclude them altogether, but the right of the State to exclude a foreign corporation cannot be used to prevent it from resorting to relief under the Federal Constitution, or to impose a tax which by established principles the State cannot levy. *Fidelity & Deposit Co.* v. *Tafaya,* 270 U. S., 426, 434, 46 S. Ct., 331, 70 L. Ed., 664.

■ The question presented by this appeal is whether or not the State could impose the tax. We construe these provisions of the statute to mean that the tax is levied upon the right to do business in the State, measured by a percentage of annual premiums to the exclusion of all other taxes, the tax on the annual premiums to be paid throughout the life of policies issued. The policies written by the company under its license to do business were not assurances for a single year, with the privilege of renewal by paying the annual premium, but were entire contracts of insurance. Each annual premium was part consideration of the insurance for life. *Fourth & First Bank & Trust Co.* v. *Fidelity & Deposit Co.,* 153 Tenn., 176, 182, 281 S. W., 785; *Knickerbocker Life Insurance Co.* v. *Heidel,* 76 Tenn. (8 Lea), 488, 498. The tax was imposed upon premium receipts on policies written while the company was licensed to do business in the State. It was levied when the company applied for and accepted license to do business in the State, and was measured by a percentage of premiums received annually throughout the life of policies issued. Though

measured by two and a half per cent of premiums received on policies issued by the company while exercising its license from the State, the tax was levied upon the privilege of entering the State and engaging in the insurance business, and not upon the annual premiums. The distinction between the tax and the measure of the tax should not be confused, and when the distinction is kept in mind the purpose of the Legislature seems clear. The tax on premiums received after the company's withdrawal from the State is not a tax upon premiums mailed by residents of the State to defendant after its withdrawal. No such tax could be imposed. *State* v. *Connecticut Mut. Life Insurance Co.,* 106 Tenn., 282, 334, 61 S. W., 75. This tax was imposed upon the company as a condition to the exercise of the privilege of writing insurance policies, kept alive by annual payment of premiums, the tax on the premiums being distributed as were the premiums for the life of the policies. The defendant insurance company by its compliance with the statute adopted and agreed to the construction we have given it, and cannot now repudiate its provisions.

Since in our view the tax accrued when the company qualified to do business in Tennessee and issued the policies upon which the tax is claimed by the State, the defendant is bound by its power of attorney authorizing service of process upon the insurance commissioner.

## On Petition to Rehear.

The defendant, a life insurance company, qualified to do business in Tennessee in 1926, and withdrew from the State in 1931, leaving unmatured policies on which premiums were sent by the persons insured to the company's home office in Chicago. For reasons stated in

the opinion filed, the defendant was held liable for the tax measured by premium receipts from the unmatured policies. We have before us a petition by defendant for a rehearing.

It is said by petitioner that the opinion holding defendant liable for the tax is not based on Code, sections 6120 and 6122, but is based altogether upon Section 6118. Upon that premise the petitioner proceeds to consider whether Section 6118 levies a tax upon unpaid premiums after the company's withdrawal from the State. We quoted Sections 6118, 6120 and 6122, and said [supra, p. 5; 137 S. W. (2d), 277, 278]:

"We construe these provisions of the statute to mean that the tax is levied upon the right to do business in the state, measured by a percentage of annual premiums to the exclusion of all other taxes, the tax on the annual premiums to be paid throughout ·the life of policies issued. . . . Though measured by two and a half per cent of premiums received on policies issued by the company while exercising its license from the state, the tax was levied upon the privilege of entering the state and engaging in the insurance business, and not upon the annual premiums. The distinction between the tax and the measure of the tax should not be confused, and when the distinction is kept in mind the purpose of the legislature seems clear. . . . The defendant insurance company by its compliance with the statute adopted and agreed to the construction we have given it, and cannot now repudiate its provisions.".

Our construction of the statute is not contrary to the opinion in the case of *State* v. *Connecticut Mut. Life Insurance Co.*, 106 Tenn., 282, 335, 61 S. W., 75, 78. The facts of that case are not identical with the facts of this case. The effort there was to enforce a tax on

premiums after the company's withdrawal from the State in 1894. In response to the State's petition for rehearing, in which it was insisted that notwithstanding withdrawal of the company in 1894 it should be held liable for the tax under the Acts of 1897 and 1899, the Court said:

"We have no doubt but that a foreign company which enters the state after the passage of such an act, or which, being in the state prior to its passage, remains in the state, and doing business in it, after the acts take effect, are subject to the provisions of the acts, even if they afterwards withdraw; but these acts do not apply in the present case, because the defendant company withdrew from the state in 1894, and was not doing business in the state when the acts took effect in 1897 and 1899. Nor was it made a condition upon which the company originally entered the state that it should continue to pay, after its withdrawal, upon business then in force.

"This decision does not in any way question the right of the legislature to impose such tax requirements upon foreign corporations as it may see proper as a condition for their entering the state, nor such as may be legitimate for their continuing to do business in the state, but it only applies to companies which withdraw from the state at a time when there is no act in force taxing them for receiving premiums beyond the state, and which have not expressly or impliedly consented to such taxes."

In conformity with the foregoing judicial declaration, the Legislature enacted Chapter 442, Acts of 1903, providing for payment of the tax levied by Code, section 6118, upon premium receipts for the life of policies issued while the company was licensed to do business in the State. It is not necessary to reiterate statements made in the original opinion. The Act of 1903, which was

carried into Code, sections 6120 and 6122, supplemented
Code, section 6118, which was derived from Chapter 160,
section 19, Acts of 1895 and antecedent acts. The Act of
1903 was apparently passed to meet the decision of the
Court denying the State's right to recover premiums
under statutes passed subsequent to the insurance com-
pany's withdrawal from the State. We construed Code,
sections 6118, 6120, and 6122 together and in accord with
the judicial declaration which induced the enactment of
Chapter 442, Acts of 1903.

We find no merit in the petition for rehearing.

Denied.