## SOUTHERN SURETY CO. v. EQUITABLE SURETY CO.

No. 10299—Opinion Filed Nov. 22, 1921.

(Syllabus.)

1. **Insurance—Indemnity Insurance—Construction of Contract.**

When the terms of a bond clearly indicate the intention of the obligor and obligee that there shall be an indemnity to the latter on account of the default of an employe, doubtful terms will be so construed as to effectuate rather than to defeat the intention.

2. **Same.**

On June 1, 1904, the Bankers Surety Company executed to the Citizens Savings & Trust Company a bond to protect the latter against defalcations of a certain employe. This bond was kept in force by renewal certificates to March 1, 1912. On June 1, 1912, the Equitable Surety Company executed its bond to the Citizens Savings & Trust Company, and to this bond was attached a rider providing that, after the time had expired for making claim against the Bankers Surety Company under its bond, and if no claim had arisen or been made thereon, to make the bond of the Equitable Surety Company commence on the original date of the bond of the Bankers Surety Company, subject to all the terms and conditions of said bond. On April 10, 1913, to be effective from and covering a period from March 1, 1913, to March 1, 1914, the Southern Surety Company executed its bond to the Citizens Savings & Trust Company in a like sum, to which was attached a rider, providing that, after the time had expired for making claim against the Bankers Surety Company under its certain bond expiring March 1, 1912, and after the time had expired for making claim against the Equitable Surety Company under its bond expiring March 1. 1913. and if no claim had arisen or been made thereon. to make its obligation under the annexed bond commence on the original date of the bond of the Bankers Surety Company. On the 7th day of May, 1913, the Equitable Surety Company executed to the Southern Surety Company a reinsurance agreement covering the period of one year from the first of March, 1913, for the sum of $7,500, or one-half of any sum or sums the Southern Surety Company would become liable for and pay under or by virtue of its bond. The bond of the Southern Surety Company and the reinsurance agreement of the Equitable Surety Company, by renewal certificates, were kept in force to the time of the death of the employe. Held, that the several bonds. the riders attached thereto, together with the renewal certificates, constituted one continuous contract in determining the liability of the Southern Surety Company under its bond.

3. **Same—Contract of Reinsurance.**

The liability of the reinsurer depends upon the terms of the policy of reinsurance, and not upon the question of whether or not the insured strictly complied with the provisions of the original policy as to notice of loss, unless the reinsurance policy contains a proviso making the giving of such notice a condition precedent to liability.

Error from District Court, Bryan County; Jesse M. Hatchett, Judge.

Action by the Southern Surety Company against the Equitable Surety Company to recover on contract of reinsurance. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

O. L. Rider and Stanard & Ennis. for plaintiff in error.

Utterback & McDonald, for defendant in error.

PITCHFORD, V. C. J. This is an appeal from a judgment rendered in the district court of Bryan county, Oklahoma, in an action brought by the Southern Surety Company, as plaintiff, against the Equitable Surety Company, as defendant, to recover upon a reinsurance agreement. The parties hereafter will be referred to as they appeared in the trial court.

The facts, briefly stated, are as follows: On June 1, 1904, the Bankers Surety Company executed its bond to the Citizens Savings & Trust Company, of Cleveland, Ohio, in the sum of $25,000, for the purpose of protecting the latter company against any loss it might sustain by reason of one George Lomnitz, who was named as employe of the company. This bond was renewed by continuance certificates and continued to be in force until March 1. 1909. at which date the amount was changed to

$15,000, and was by renewal receipts continued to March 1, 1912.

On June 1, 1912, the defendant herein. Equitable Surety Company, executed its bond to the Citizens Savings & Trust Company in the sum of $15,000, effective from March 1, 1912, to March 1, 1913; the purpose of this bond being the same as mentioned in the bond given by the Bankers Surety Company. The bond executed by the defendant company had attached thereto the following rider:

"Equitable Surety Company, of St. Louis, Missouri, surety on the annexed bond of suretyship No. 9957 effective from March 1, 1912, in the amount of fifteen thousand ($15,000) dollars, to the Citizens Savings & Trust Company, Cleveland, Ohio, does hereby undertake after the time has expired for making claim against the Bankers Surety Company under its certain bond, executed on behalf of George Lomnitz in the amount of fifteen thousand ($15.000) dollars, expiring March 1, 1912, if no claim has arisen, or been made thereon, to make its obligation under the annexed bond commence on the original date of the bond of the Bankers Surety Company subject to all of the terms and conditions of said bond of the Bankers Surety Company."

On April 10, 1913, to be effective from and covering the period from March 1, 1913, to March 1, 1914, the plaintiff, Southern Surety Company, executed its bond to the Citizens Savings & Trust Company in the sum of $15,000 for the same purposes as mentioned in the foregoing bonds. To the bond executed by plaintiff there was attached the following rider:

"Southern Surety Company, an Oklahoma corporation, with general offices at St. Louis, Missouri, surety on the annexed bond of suretyship, No. 39310, effective from March 1, 1913, in the amount of fifteen thousand ($15,000) dollars, to the Citizens Savings & Trust Company, Cleveland, Ohio, does hereby undertake after the time has expired for making claim against the Bankers Surety Company under its certain bond expiring March 1, 1912, and after the time has expired for making claim against the Equitable Surety Company, under its certain bond expiring March 1, 1913, executed in behalf of George Lomnitz in the amount of fifteen thousand ($15,000) dollars, if no claim has arisen or been made thereon, to make its obligation under the annexed bond commence on the original date of the bond of the Bankers Surety Company subject to all of the terms and conditions of said bond of the Bankers Surety Company or the Equitable Surety Company."

On the 7th day of May, 1913, the defendant executed to plaintiff what is denomina-

ted a reinsurance agreement, covering the period of one year from the first of March, 1913, for the sum of $7,500, or one-half of any sum or sums the plaintiff, Southern Surety Company, would become liable for and pay under or by virtue of the bond executed by plaintiff. This reinsurance agreement contained the following provision:

"That in case said bond shall be continued in force by renewal certificate, this reinsurance may be continued in force to cover said renewal or renewals of said bonds for further term or terms as long as the reinsurer and the reinsured agree to do so, and such continuance shall be evidenced by renewal certificate or certificates, and by the payment of the annual premium or premiums agreed or to be agreed upon as evidenced in such renewal certificate or certificates."

Under the issues joined, the cause went to trial before the court, a jury having been waived. After the evidence had been introduced, the court rendered judgment in favor of defendant, from which the plaintiff appeals.

The contentions of the plaintiff and defendant are covered by two propositions: The first being, Do the several bonds and renewal certificates constitute one continuous contract and prolong the time of the discovery of the defalcation of the employe, or does each bond and renewal certificate constitute a separate and distinct contract. Second, Can the defendant take advantage of the failure of the Citizens Savings & Trust Company to strictly comply with the provisions in the bond executed by the Southern Surety Company as to notice of the defalcations of the employe?

There is some conflict of judicial opinion as to whether a bond and the annual renewal certificates thereof should be construed as separate contracts, and the period of discovery limited to a fixed time after the expiration of each, or as one continuous contract, in which event discovery must be made within a fixed time after the expiration of the last renewal. If the bond and each annual renewal thereof should constitute distinct and separate contracts, and not parts of one continuous contract, then the liability of the Bankers Surety Company, on account of the defalcation of Lomnitz in 1909, ceased upon failure to present a claim therefor within six months after the termination of the contract expressed in the annual renewal receipt for the year 1909, and was not included within the subsequent obligation of either the

bond of the Equitable Surety Company or that of the Southern Surety Company. But, if the bond of the Bankers Surety Company, together with the several renewal receipts, constitute one continuous contract, the same as though said bond had been written for the period commencing June 1, 1904, and expiring March 1, 1912, then the defalcation remained a latent liability for which no claim had been made against the Bankers Surety Company at the time the bond of the Equitable Surety Company was written, and this defalcation in that event would be picked up and carried by the bond of the latter under and by virtue of the terms of the rider attached thereto, and likewise, upon the termination of the Equitable Surety Company's bond without any claim being made thereon on account of said transaction within the time limited, then, the defalcation would be a liability within the obligation of the bond of the Southern Surety Company, which in turn continued to be liable thereon by practically the same provisions, and especially by the provisions contained in the rider.

The rider attached to the bond executed by the Southern Surety Company is couched in plain and unambiguous language. It plainly states that as soon as the time for filing claims against either of the bonds executed by the Bankers Surety Company or the Equitable Surety Company had expired, then the obligation of the bond of the Southern Surety Company should commence as of June 1, 1904, being the date of the bond of the Bankers Trust Company. The rider should be construed in connection with the bond to which it was attached, and must be considered as a part thereof; otherwise, there would and could be no purpose in having the same attached to the bond. When the reinsurance agreement of the defendant was executed in favor of the plaintiff as a counter security, the defendant, by reason of the rider attached thereto, was advised of just what was covered and included in the bond of the Southern Surety Company, and it therefore follows that the Equitable Surety Company, under its bond, would become liable to the plaintiff for one-half of the amount for which the bond of the Southern Surety Company would be liable. The bond of the Southern Surety Company, by reason of successive annual renewals thereof, was kept in force until the time for discovery of said loss expired, which was six months after the death of Lomnitz. The weight of authority, as well as the better reason, leads us to the conclusion that the bond of the Bankers Surety Company and the successive annual renewals thereof, the bond of the Equitable Surety Company, and the bond of the Southern Surety Company and the successive annual renewals thereof, and the reinsurance bond of the Equitable Surety Company, constitute one continuous obligation of the Southern Surety Company, the same as though written to commence on the "original date of the bond of the Bankers Surety Company," June 1, 1904, and terminating on March 31, 1915, the date of Lomnitz's death, and it was liable for any pecuniary loss up to $15,000 of the character and nature specified therein, provided the same was discovered within six months after the death of Lomnitz. The language contained in the original bond of the Bankers Surety Company that "This bond shall not lapse at the end of the above time if it shall be continued in force by a renewal receipt or receipts," and the language in the bond of the Equitable Surety Company that "This suretyship may be continued from year to year," and the language of the bond of the Southern Surety Company that "This bond may be continued from year to year," and the undertaking in the riders attached to the bonds of the Equitable Surety Company and the bond of the Southern Surety Company "To make its obligation under the annexed bond commence on the original date of the bond of the Bankers Surety Company subject to all of the terms and conditions of said bond of the Bankers Surety Company," in our judgment clearly establish the intention of the parties in the execution of the bonds, and that intention was to carry forward all contract obligations beyond each renewal period and prevent separating such periods for discovery purposes; and, if the loss of the Citizens Savings & Trust Company, by reason of the defalcation of Lomnitz, was discovered within six months after his death, the liability of the Southern Surety Company became fixed, provided other provisions of the bond were complied with.

The rule appears to be well settled that bonds of the nature involved herein should be construed, where capable of two constructions, so as to give protection to the insured; the rule being announced in Southern Surety Co. v. Tyler and Simpson, 30 Okla. 116, 120 Pac. 936, as follows:

"It is a familiar rule in the law of insurance that, if a bond is fairly and reasonably susceptible of two constructions, one favorable to the insured, the other to the insurer, the former, if consistent with the objects for which the bond was given, must be adopted, and this for the reason that the instrument which the court is invited to interpret was drawn by attorneys, officers, or agents of the insurer."

This court again cites the rule in National Life Ins. Co. v. Norton, 44 Okla. 783, 145 Pac. 1138, in the fifth paragraph of the syllabus, as follows:

"If a policy is so drawn as to require interpretation, and to be fairly susceptible of two different constructions, the one will be adopted that is most favorable to the insured."

In Rankin v. United States Fidelity & Guaranty Co. (Ohio) 99 N. E. 314, the first paragraph of the syllabus is as follows:

"When the terms of a bond clearly indicate the intention of the obligor and obligee that there shall be an indemnity to the latter on account of the default of an employe, doubtful terms will be so construed as to effectuate rather than to defeat that intention."

The facts in Rankin v. United States Fidelity & Guaranty Co., supra, are very similar to the facts in the instant case. In the Ohio case the bond by its terms was to be effective from February 5, 1903, to February 5, 1904. Annual renewal receipts were thereafter issued identical in form with that of the plaintiff herein. The defalcation complained of occurred during the terms of the original bond and the first renewal thereof. Discovery was not made within the time limited in the original bond. The court held that the bond should be construed as though it had been originally executed for two years.

In Chatham Real Estate & Improvement Co. v. United States Fidelity & Guaranty Co. (Ga.) 90 S. E. 88, the court said:

"The defendant contends that each renewal of the original bond constituted a separate and distinct contract; that each renewal was a new bond, containing all the provisions and conditions of the original bond, and extending over a period of only one year. The 'continuation certificate,' with the original bond, made a complete and continuous contract until January 1, 1912, and any shortage occurring within that period should be cared for by the surety company, under the terms of the original bond and the certificate."

In the case just quoted from the bond ran for a period from January 1, 1905, to January 1, 1906, and was regularly renewed each year, the last renewal being over the period from January 1, 1911, to January 1, 1912. The defalcations complained of occurred during the years 1907 and 1909, but were not discovered until after June 28, 1911.

In Green v. United States Fidelity & Guaranty Co. (Tenn.) 185 S. W. 726, the original bond was effective for the period from February 1, 1908, to February 1, 1909, and there were thereafter executed annual "continuation certificates," the last of which expired on February 1, 1913. Demurrer to the complaint was sustained by the lower court, on the grounds that the only bond or renewal in force covered a period from February 1, 1912, to February 1, 1913, and that it was not alleged that the loss claimed to have been sustained, or the acts out of which such loss arose, were committed within said period. The Supreme Court of Tennessee, in reversing the lower court, said:

"In some senses the renewal effected by the continuation certificate is a new or 'separate' contract. This it may be without being 'independent.' It is requisite that the minds of the original parties meet again in assent to the extension of the contractual relation over the new period; and it depends upon the payment of a distinct consideration. But those facts have not been deemed sufficient to make the payment of two penalties obligatory as upon distinct contracts. Neither, in our opinion, do they give occasion, necessarily, to the obligations being treated as independent in the matter of fixing the period for discovery in order to liability. The original bond incorporates terms that project it forward to cover the renewal period, without separating the periods for discovery purposes. The reason, in our view, is the purpose on the part of the company to hold the indemnified person to persistence as a patron. In another field of insurance a cumulative feature appears; frequently in accident insurance the recoverable sum is made to be an augmenting quantity from year to year, for quite a period, provided the policy is kept renewed by the payments of continuation premiums."

We shall now discuss the remaining question involved, and that is, Did the Citizens Savings & Trust Company substantially comply with the provisions contained in the bonds of the Southern Surety Company as to notice of the discovery of the defalcations of Lomnitz? While we have held that the several bonds, the riders attached thereto, as well as the renewal certificates, constitute one continuous contract, yet this continuity applies more particularly to the purpose for which the bonds were executed, which was to secure the Citizens Savings & Trust Company against the defalcations of its employe, Lomnitz. While the rider attached to the bond executed by the defendant to the Citizens Bank & Trust Company, as well as the rider attached to the bond of the Southern Surety Company, provides that the bonds executed by both plaintiff and defendant were made

subject to all the terms and conditions of the bond executed by the Bankers Surety Company, this provision should receive such a construction as would effectuate the intention of the parties. If there should be any serious conflict as to the kind of notice, or as to the time the notice should be given, or as to the method of giving the notice between the bond of the Bankers Surety Company and that of the Southern Surety Company, we are inclined to the opinion that the provisions in that respect as contained in the bond of the Southern Surety Company should prevail.

Lomnitz died on March 31, 1915, and during the life of the bond executed by the Southern Surety Company, and the reinsurance bond of the defendant; therefore, under the provisions of the bonds, the Citizens Savings & Trust Company had six months from the 31st of March in which to discover any loss resulting from the defalcations of Lomnitz. Immediately upon the death of Lomnitz accountants were employed to investigate the records covering transactions conducted by Lomnitz. Upon learning that there might be irregularity in this account, the Citizens Savings & Trust Company immediately telephoned Mr. R. H. Clark, the Cleveland agent of the Southern Surety Company, and had him to call at the office of the Citizens Savings & Trust Company, at which time he was advised of the investigation then being made, and with the chances, as they appeared at that time, that the trust company might have occasion to make a claim against the bond of the Southern Surety Company. As stated above, the defalcation of the employe, Lomnitz, occurred in 1909, during the life of the original bond; the evidence fails to disclose the exact date of the discovery of the loss, but, on the 7th day of December, 1915, the formal notice was given the Southern Surety Company in writing by registered mail, addressed to the president of the company, at St. Louis, Missouri, and within 90 days thereafter an itemized claim provided for was furnished.

The Citizens Savings & Trust Company had no claim against the Bankers Trust Company or the Equitable Surety Company. The bonds executed by these two companies to the Citizens Savings & Trust Company had long ceased to be effective in so far as a protection against any loss on account of the defalcation of Lomnitz. The only bond that could be looked to by the Citizens Savings & Trust Company for the loss was the bond executed by the Southern Surety Company, and this bond provided for any

loss discovered within six months from the death of Lomnitz. The shortage of Lomnitz was discovered within the time provided in the bond, and the giving of the notice was a matter subsequent to the discovery of the defalcation. There is no question but that the Southern Surety Company could have waived the failure to give the notice within time, and if a strict compliance with this notice was waived by the Southern Surety Company, we are not disposed to adopt the strict, technical view contended for by the defendant, that failure to strictly comply with this provision of the bond could be taken advantage of by the defendant company. Under the terms of the reinsurance bond, no provision is made for notice on the part of the reinsurer, nor is the liability of the latter in any way conditioned upon compliance by the Citizens Savings & Trust Company with the conditions of the bond of the Southern Surety Company as to notice. By the terms of the bond of the defendant company, it is provided that it will pay immediately to the Southern Surety Company one-half of any sums which the Southern Surety Company shall become liable to pay and pay for the defaults occurring thereunder. The Equitable Surety Company did not in any way condition its liability upon compliance on the part of the Citizens Savings & Trust Company with all of the terms and conditions of its contract with the Southern Surety Company. No attempt has been made to show that the defendant company has, in any manner, been injured by reason of the failure to comply strictly with the provisions as to notice. The notice given to plaintiff seems to have been accepted as sufficient under the conditions as they then existed, and plaintiff made no attempt to escape liability on the ground of failure to give strict notice. We cannot believe that it was the duty, under all the facts as shown by the evidence, of the plaintiff to force the Citizens Savings & Trust Company to sue on its claim for $13,000 and have the liability determined by judicial proceedings before it could be in position to make claim against the defendant company; and when the compromise was made by paying one-half of the amount claimed, this was as much for the benefit of the defendant company as it was for the plaintiff.

The contention of the defendant inevitably leads to the conclusion that when the proposition had been made for the Southern Surety Company to settle the $6,500, one-half of the loss claimed, and the offer had been refused, and an action had been brought and judgment recovered for $13,000, and

this amount being paid by plaintiff, and then the action had been brought against the defendant for $6,500, the defendant would claim that it was only liabile for one-half of the $6,500, for the reason that plaintiff should have accepted the compromise offered, the judgment against the Southern Surety Company would not be binding on the defendant, as the proceedings would have been purely ex parte in so far as the Equitable Surety Company was concerned. The Citizens Savings & Trust Company was not making any claim against the defendant, and if the position of the defendant should be conceded, and it not being bound by any judgment against the Southern Surety Company, the defendant could have made any defense when sued for one-half of the judgment paid by the Southern Surety Company that could or should have been made by the latter in the original action, even though this defense had never been thought of or had been overlooked. When the Southern Surety Company recognized its liability, or if the liability was in doubt, and it in good faith paid the $6,500, it would clearly be entitled to contribution from the defendant for one-half of the amount paid.

In the case of Fireman's Fund Insurance Co. v. Aachen & Munich Fire Ins. Co. (Cal. App.) 84 Pac. 253, action was brought to recover on a policy of reinsurance, as in the instant case. There, the defendant claimed that it was not liable because of the fact that the payment for the loss incurred by the insured was a voluntary payment. The first paragraph of the syllabus reads as follows:

"The liability of a reinsurer depends on the terms of the policy of reinsurance, and not on the question of whether insured suffered a legal loss on the original policy."

We conclude that the judgment of the trial court should be reversed and the cause be remanded for further proceedings not inconsistent with the views herein expressed, and it is so ordered.

HARRISON, C. J., and McNEILL, ELTING, and KENNAMER, JJ., concur.