**STATE ex rel. FREELING, Atty. Gen., v NEW AMSTERDAM CASUALTY CO.**

No. 11183—Opinion Filed May 5, 1925.

**Insurance—Fidelity Bond—Renewal—Effect on Liability.**

When a bond guaranteeing the fidelity of an employe as to a specific duty, and not issued for a definite term, is renewed by the payment of the second annual premium on the contract, it is still only one contract and one penalty, and the receipt for the annual premium in renewal serves only to extend for a new period of time the indemnity provided by the original bond.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by the State of Oklahoma against the New Amsterdam Casualty Company. From judgment in favor of the defendant, plaintiff brings error. Affirmed.

S. P. Freeling, R. E. Wood, and Geo. E. Merritt, for plaintiff in error.

Harris, Spielman & Harris and Paul G. Darrough, for defendant in error.

Opinion by PINKHAM, C. This action was instituted in the district court of Oklahoma county by the plaintiff in error, as plaintiff against the defendant in error, as defendant.

The cause was tried upon an agreed statement of facts from which it appears, briefly stated, that one Claude Ray was in the employ of the School Land Department of the state between the 14th day of May, 1916, and the 19th day of May, 1917; as clerk in the office of the School Land Department; that on or about May 15, 1916, a bond was furnished, as required by law, protecting the state of Oklahoma against losses occasioned by any act of fraud, dishonesty, larceny, embezzlement, etc., by Claude Ray, of moneys, belonging to the state, entrusted to his care.

The first paragraph of the bond in question reads as follows:

"New Amsterdam Casualty Co.

"Amount, $163,000.          Premium, $326.

"Know all men by these Presents, that the New Amsterdam Casualty Co. (hereinafter called surety) hereby agrees to pay unto the state of Oklahoma (hereinafter called employer) within 90 days after proof of loss, as herein set forth, the amount of any loss, in respect of any moneys, funds, securities, or other personal property of the employer, or for which the employer may be responsible, which any employe named in the schedule hereto attached, or added thereto by acceptance notice as hereinafter provided, may, while in any position in the continuous employ of the employer, directly or by collusion with others, cause to the employer, not exceeding, however, the sum set opposite the name of such employe in said schedule or in said acceptance notice through any act of fraud, dishonesty, larceny, embezzlement, forgery, misappropriation, wrongful abstraction, or willful mishapplication, committed (if such employe be named in said schedule) after noon of the 15th day of May, 1916 ' (or if added thereto by acceptance notice, after noon of the effective date thereof), but before the employer shall become aware of any default on the part of such' employe and discovered before the expiration of one year from the termination or the cancellation of this bond, as to such employe, whichever may first happen.".

A schedule of employes was prepared and opposite the name of each employe was placed the amount for which the company was insuring the state of Oklahoma, and the amount set opposite the name of Claude Ray was $5,000, and a premium was paid upon the insurance for Claude Ray and for a number of other employes, up to January 15, 1917.

At that time another premium was paid by the School Land Department upon the persons employed in that department, including Claude Ray, upon the presentation of a claim by the agent of the insurance company, a copy of which claim, or receipt, is fully set out in the statement of facts.

The material part of this receipt, or claim, is as follows:

"1-15.  Second annual premium on said schedule bond No. 112, covering all employes of the state School Land Department for the period of January 15; 1917, to January 15, 1918."

The first premium paid on the bond by the state to the New Amsterdam Casualty Company, the maker thereof, was for a period extending from May 15, 1916, to January 15, 1917.  Thereafter the New Amsterdam Casualty Company collected from the state its second premium for the period of time between January 15, 1917, and January 15, 1918.

On or about May 19, 1917, the plaintiff in error first became aware that Claude Ray, employe of the School Land Department, had embezzled and misappropriated moneys coming under his care.  This discovery showed embezzlement by the said Claude Ray, between May 15, 1916, and January 15, 1917, of a sum in exce s of $5,000, and that between January 15, 1917, and May 19, 1917, the date of the discovery, he had misappropriated an additional sum of $4,983.68.

The petition of plaintiff in error set out two causes of action, one for the penalty on the bond covering the losses susta'ned after May 15, 1916, and prior to January 15, 1917; the second cause of action sought to recover the loss occurring after January 15, 1917, and up to the time of the discovery, May 19, 1917.

To the petition was attached an itemized statement of the defalcations of the said Claude Ray on each of the two causes of action, a copy of the bond sued on, together with copies of the schedules showing the names of the persons, positions, amount of the bond and the premiums, and the periods for which the defendant in error would be responsible for the defalcation for the premium paid.

Defendant in error demurred to the second count of the petition, which was, by the court, overruled.

Thereafter defendant in error filed its answer, denying any liability beyond the sum of $5,000.

The case was submitted to the district court, without a jury, upon the agreed statement of facts on which the judgment of the court was rendered.

It was the judgment of the court that plaintiff in error's recovery should be for the amount of $5,000, only, and rendered judgment for said amount on the first cause of action, but the court found from the agreed statement of facts and the law of the case that plaintiff in error was not entitled to recover upon the second cause of action set out in their petition because, under the law, as applied to the agreed statement of facts, there was no liability in favor of the plaintiff in error and against the defendant in error.

To reverse the action of the lower court in denying the liability of the insurance company for the additional amount of $4,983.68,

the plaintiff below has brought said cause before this court for review.

The appeal is in this court by transcript of the record, and not by bill of exceptions or case-made.

The propositions submitted and discussed by the plaintiff in error, in its brief, in support of its contention that the district court erred in rendering judgment for the defendant in error and against the plaintiff in error on the second cause of action, pleaded in the petition of the plaintiff in error, are: First, that under the bond and schedules thereto and the agreed statement of facts there was a renewal of the former guaranty made by the surety company and the payment of a new consideration by the state which constituted a separate and distinct contract made on a new consideration; second, that the penalty of the bond was not exhausted by the judgment rendered on the first cause of action; third, that it is the clear intention of the parties in the case that the amount of the recovery would not be limited to the penalty named in the bond.

As we understand the contention of plaintiff in error, it is that the payment of the second annual premium and the presentation of the claim therefor by the surety company constitute a new, separate, and distinct contract of insurance, and that it is entitled to recover under its first cause of action, $5,000, and under its second cause of action $4,983.68, making a total of $9,-983.68.

It is the theory of the defendant in error, which was followed by the trial court, that the said bond executed by the New Amsterdam Casualty Company, in May, 1916, constituted and was a continuous bond, duly in force and effect up until the time of the discovery of the embezzlement committed by Claude Ray, and that the annual premium paid in January, 1917, did not constitute or make a new bond, but was simply the act which kept alive the old bond for an additional period. In other words, that the issuance of receipts for the annual premium did not constitute or make a new and distinct contract, but was simply a continuation of the contract already in force.

It will be observed that the only date set out in the bond was May 15, 1916, which was the date from which liability accrues. Evidently this was for the reason th t the position held by Claude Ray was that of a clerk and therefore a position with no definite term, and as all the employes carried by the schedule had similar positions, it is reasonable to infer that the reason for not making a definite date on which the bond would expire was that such employes had their positions for no definite time, and that the bond was intended to cover their entire period of service in their then positions.

In this respect this bond is in the nature of a life insurance policy, in that it will not be kept in force indefinitely unless the annual premiums thereon are paid, and if the annual premium, paid in January, 1917, had been refused, the insurance company would doubtless have exercised the option contained in one of the conditions of the bond, which stated that the surety could cancel the same upon giving 30 days' written notice. That provision of the bond also gives the privilege to the employer of canceling the same as to any of the employes upon giving written notice to the surety.

It is to be further observed that the annual premium, paid for 1917, and the receipt or claim set out refers back to the original bond, specifying the number thereof, to wit, No. 112; and then states that the amount so paid is the annual premium from January 15, 1917, to January 15, 1918.

There is no statement of any character that this premium receipt renews the old contract or makes a new contract with the same terms and conditions as the original contract, which provisions are found in many cases holding that a new and distinct contract of insurance has been made for the subsequent term.

This receipt does not incorporate the condition of the original bond into a new contract but expresses on its face that it is the payment of the second annual premium on a certain and distinct bond. No. 112.

It will further be seen that the New Amsterdam Casualty Company agrees to pay to the state of Oklahoma the amount of any loss which Claude Ray caused the School Land Department, not exceeding, however, the sum set opposite the name of such employe in said schedule or in said acceptance, which was $5,000.

It is urged, with great force and by citation of a number of cases, which, it is contended, support the contention, that the payment of the second premium and the presentation of the claim therefor by the surety company constitutes a new, separate, and distinct contract of insurance.

Among the cases cited is Florida Central & P. R. R. Co. v. American Surety Co. of New York, 99 Fed. 674.

The court there holds that the language of the bond involved in that case, that only the last insurance of the employe shall be in force at any one time, had some definite meaning, and that such language must have been used to express clearly the idea that new contracts' were to be considered as executed for each new period of time, and that the execution of each new contract, whether by certificate or by renewal, would make an entirely new contract instead of a mere continuation of the old.

It is said in the opinion:

"Such being the case, the meaning of the part of the contract which declares that upon the execution of a stipulated amount of risk or insurance in behalf of an employe the company shall not be responsible under any previous insurance of said employe becomes clear, and is that, when a new schedule of the amount of insurance in behalf of any employe formerly on the schedule has been executed or completed and actually or constructively accepted the old or previous insurance against losses previously committed by him is at an end, and that for these losses the company is no longer liable. The contract further declares that only the last insurance of the employe shall be in force at one time. * * * These provisions are inconsistent with the theory that it was the intention or the idea of the parties that a continuing liability for old and undiscovered losses in continuous previous years was being piled up in each renewed contract."

In DeJernette v. Fidelity & Casualty Co. (Ky.) 33 S. W. 828, cited by plaintiff in error, the renewal certificate reads as follows:

"The contract under bond No. 53939 is hereby renewed in accordance with the terms of the bond, the guaranty to cover the bond above named only."

It appears that in the body of the bond in the case cited there was a specific provision that claims could only be made under said bond or any renewal thereof or acts committed during its currency. The bond in that case covered a definite period from January 19, 1891, to January 19, 1892. The court construed the renewal certificate as the making of a new and distinct bond by adopting the terms and conditions of the original bond.

It may be observed that in a later Kentucky case, U. S. F. & G. Co. v. Citizens National Bank, 143 S. W. 997, it is held that the original bond and certificate of renewal constitute but one contract, and that but one recovery may be had.

In the opinion it is said:

"Each of the certificates refer to the fact that they continue bond No. 292114, the number of the bond executed March 15, 1904, clearly showing that one obligation existed for all of these years. The bond was kept alive in a manner similar to an insurance policy; that is, by the payment of annual premiums. First National Bank v. Fidelity, etc., Co., 110 Tenn. 10, 75 S. W. 1076, 100 Am. St. Rep. 765; and Fidelity Deposit Co. v. Champion Ice Mfg. & Cold Storage Co., 133 Ky. 74, 117 S. W. 393."

A determination of the question as to whether recovery can be had upon the bond in the instant case which limited the company's liability to $5,000, and also a recovery of an additional amount by reason of the renewal certificate depends upon the facts of the case and the language used in the contract.

The cases cited by plaintiff in error and others of similar import are, we think, inapplicable to the instant case; but aside from this, the proposition submitted by plaintiff in error to the effect that the payment of the second annual premium constituted a new, separate, and distinct contract of insurance is not, we think, sustained by the weight of authorities, including the decision of this court in Southern Surety Co. v. Equitable Surety Co., 84 Okla. 23, 202 Pac. 295.

Under the rule announced in that case there was but one contract in the instant case, and the amount named in the bond is the limit of the liability of the defendant in error.

In Walker on Fidelity Bonds, page 135, it is said:

"It is now well settled that where a fidelity bond is issued for one year or other stated period, and is thereafter periodically renewed or continued in force by the issuance of certificates which specifically refer to and adopt the terms of the original instrument, and where that instrument provides that the total liability of the surety shall not exceed the penal sum named therein, and where there are defaults occurring during the original terms and also during one or more renewal terms or during more than one renewal term, in such case the liability of the surety is limited to the penalty of the original bond. The mere statement of the proposition would seem to be sufficient to indicate the rule by which the surety's liability is to be gauged but a determined effort has been made, in a number of cases, to treat each renewal certificate as an independent contract, and to hold the surety for loss under the original bond, and under the renewals where loss occurred for such respective losses up to the penalty of

the bond, and of each certificate. * * * The rule is, however, as above indicated, that the surety is only liable for the penalty of his bond."

The third proposition discussed by plaintiff in error in its brief is to the effect that even if admitted that the bond is a continuing bond, yet this case presents an exception to the rule where the action is one on the covenants in the bond and in such case recovery may be had beyond the penalty named in the bond.

An examination of the cases cited in support of this proposition shows very clearly, we think, that they are not applicable in this case.

Many of the cases cited are based upon actions for debt or breaches of contract where a party had his election either to sue on the bond itself or to sue for damages for breach of contract. Cases which hold that by reason of the terms of the contract or obligation the obligee had a right of election to sue for the penalty prescribed or for damages are not in point, as in the instant case no collateral obligation was assumed by the company in the nature of a contract which could extend its liability beyond the amount of the penalty named in the bond.

It must be borne in mind that this action is not one for debt or for damages for breach of contract, but is an action on the bond or covenant itself.

We conclude that the attaching of the annual premium claim to the schedule for the year 1917 did not operate to make a new contract; that there was only one contract in this case; and that the bond sued upon cannot be construed to make the surety company liable for more than the amount named therein.

We think the judgment of the trial court should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 25 C. J. pp. 1109. 1110.