## LEONARD v. ÆTNA CASUALTY & SURETY CO.
### No. 3897.

Circuit Court of Appeals, Fourth Circuit.
Nov. 12, 1935.

Charles W. McTeer and J. E. McDonald, both of Chester, S. C. (Angus H. Macaulay, of Chester, S. C., on the brief), for appellant.

Paul Hemphill and John M. Hemphill, both of Chester, S. C., for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

The sole question involved in this case is the proper construction to be placed upon the terms of a fidelity bond. The facts are not in dispute. On October 23, 1925, Ætna Casualty & Surety Company executed and delivered a bond whereby Raymond N. Speigner, as principal, and the surety company as surety, acknowledged themselves held and firmly bound unto the National Exchange Bank of Chester, S. C. The bond recited that Speigner had been appointed to the position of bookkeeper in the service of the bank; and it was covenanted and agreed in the bond that the surety, in consideration of an annual premium of 30 cents per $100 of suretyship, to be paid by the bank, bound itself to pay to the bank such pecuniary loss as the bank should sustain through fraud or dishonesty committed by Speigner while holding any position in its service during the period commencing August 17, 1925. The bond also contained the following provisions:

"Third. The suretyship shall only terminate by (a) the employer giving written notice to the surety, specifying the date of termination or the surety giving thirty days' written notice of termination to the employer. * * * (b) The retirement of the employe from the employ of the employer or upon discovery of loss through the employe.

"Fourth. The surety shall be liable for those losses only which shall be discovered during the term the bond is in force or within two years after the termination thereof."

The bank paid the annual premiums on the bond for 1925 to 1933, inclusive; but no premium receipt or continuation or renewal certificate was in evidence. During the period beginning August 17, 1930, and ending August 17, 1931, the bank sustained pecuniary loss through the fraudulent acts of Speigner in the sum of $2,500 or more; between August 17, 1931, and August 16, 1932, the bank sustained a similar loss, and between August 17, 1932, and January 17, 1933, a similar loss. The defalcations were discovered on January 17, 1933, and due proofs of loss and claims for payment were filed with the surety, whereupon the surety tendered to the bank $2,500 and interest as full and complete settlement of all its liability under the bond. This tender was refused and the complaint in this action

was filed wherein the bank set forth three separate and distinct causes of action, each for the sum of $2,500, basing its demand upon the theory that upon the payment of each annual premium, a new contract arose so that the liability of the surety was cumulative. The defendant deposited with the clerk of the District Court the full amount of the sum tendered and moved the court to consolidate the three causes of action into one on the ground that the plaintiff was entitled to only one cause of action for the penal amount of the bond, and also filed an answer admitting the facts above set out, but setting up the defense that the bond constituted only one continuous contract, and limited the total liability of the surety to $2,500. The case was submitted on the pleadings to the District Judge, who sustained the defense and entered judgment for the surety. The bank appealed.

The question at issue is to be decided by determining whether the parties contemplated a single continuous contract covering the entire period, or a series of independent contracts, each for the period of one year; and the solution necessarily depends upon the terms of the bond. It will be noticed in the first place that the instrument did not specify a definitely limited period terminating on a certain date, with the privilege of renewal[1], but covered the period commencing on August 17, 1925, and continuing until the suretyship was terminated by affirmative action, that is, by notice of termination by one of the parties to the contract, by retirement of the employee from the service, or by the discovery of loss. Secondly, no additional agreement was needed to extend the period of the coverage of the bond. It is true that an annual premium was to be paid by the bank, but this provision did not limit the period of the contract; it merely described the consideration running to the surety. There was no requirement for the renewal of the bond upon payment of the annual amount, and no stipulation that liability should cease if the annual premium should not be paid. Finally, the limitation upon the liability of the surety as to each year of the period did not become effective with regard to the expiration of the year, but only with regard to the expiration of one continuous term; for the fourth paragraph of the bond, quoted above, provided that the surety should be liable for losses discovered during the term of the bond "or within two years after termination thereof."

These terms and conditions of the bond lead us to the conclusion that only one contract was effected by the parties to this cause, and that the decision of the District Judge that the surety was liable for only $2,500 should be sustained. Similar conclusions have been reached in a number of well-considered opinions, e.g., Fourth & First Bank & Trust Co. v. Fidelity & Deposit Co., 153 Tenn. 176, 281 S.W. 785, 45 A.L.R. 610; National Bank v. National Surety Co., 105 N.J.Law, 330, 144 A. 576; Green v. United States Fidelity & Guar. Co., 135 Tenn. 117, 185 S.W. 726. They point out that such bond as that now under discussion is not made for one year with the privilege of renewal annually, but one entire bond for an indefinite period, or for such period as it should be continued by payment of an annual premium like an ordinary life insurance policy; that no additional action of the parties is necessary to keep the contract in force, and it is not necessary to make a new contract each year; and, moreover, that bonds of this sort extend the time for discovery of loss and remove

---

[1] For reference to conflicting decisions, some of which hold (a) that a bond for a definite term, with provision for annual renewal, is a continuous bond for the term of its entire life, while others hold (b) that each renewal constitutes a separate and distinct contract, see the following cases: (a) Grand Lodge U. B. of F., etc., v. Massachusetts B. & Ins. Co., 324 Mo. 938, 25 S.W.(2d) 783; Rankin v. U. S. F. & G. Co., 86 OhioSt. 267, 99 N.E. 314; Pearson v. U. S. F. & G. Co., 138 Minn. 240, 164 N.W. 919; Chatham Real Estate & I. Co. v. U. S. F. & G Co., 18 Ga.App. 588, 90 S.E. 88; Green v. U. S. F. & G. Co., 135 Tenn. 117, 185 S.W. 726; U. S. F. & G. Co. v. Shepherd's Home Lodge No. 2, 163 Ky. 706, 174 S.W. 487; U. S. F. & G. Co. v. Citizens' Nat. Bank, 147 Ky. 285, 143 S.W. 997, affirmed 147 Ky. 810, 145 S.W. 750; Southern Surety Co. v. Equitable Surety Co., 84 Okl. 23, 202 P. 295; American Indemnity Co. v. Mexia Independent School Dist. (Tex.Civ.App.) 47 S.W.(2d) 682; (b) Ladies of Modern Maccabees v. Illinois Surety Co., 196 Mich. 27, 163 N.W. 7; De Jernette v. Fidelity & Casualty Co., 98 Ky. 558, 33 S. W. 828, 17 Ky.LawRep. 1088; U. S. F. & G. Co. v. Williams, 96 Miss. 10, 49 So. 742; Mayor, etc., of Brunswick v. Harvey, 114 Ga. 733, 40 S.E. 754; Lyons v. National Surety Co., 243 Mo. 607, 147 S. W. 778, 779.

the difficulty experienced by the obligee in many cases of proving when a defalcation occurred and against what period of contract it should be charged. It may be that the last-mentioned benefit is not so valuable to the assured as the right to collect the amount of the bond for each of the years in which a defalcation occurs, as is strongly urged in Ætna Cas. & Surety Co. v. Commercial State Bank (D.C.) 13 F. (2d) 474 [reversed on other grounds in (C.C.A.) 19 F.(2d) 969]; but it is for the parties and not for the court to agree upon the obligations by which they are to be bound. See, also, United States F. & G. Co. v. Barber (C.C.A.) 70 F.(2d) 220; State ex rel. Freeling v. New Amsterdam Casualty Co., 110 Okl. 23, 236 P. 603, 42 A.L.R. 829; John Church Co. v. Ætna Indemnity Co., 13 Ga.App. 826, 80 S.E. 1093; Docking v. National Surety Co., 122 Kan. 235, 252 P. 201; Farmer's Co-op. Mercantile & Shipping Ass'n v. National Surety Co. (D.C.) 17 F.(2d) 527; compare the following cases where different provisions of the bond led to a different interpretation: Florida C. & P. R. Co. v. American Surety Co. (C.C.A.) 99 F. 674; Proctor Coal Co. v. U. S. F. & G. Co. (C.C.) 124 F. 424; Danvers Sav. Bank v. National Surety Co. (C.C.A.) 166 F. 671.

The appellant chiefly relies on the decision in Maryland Casualty Co. v. First National Bank (C.C.A.) 246 F. 892, where the language of the bond itself was similar to that relied upon in this case. The decision, however, was necessarily based not only upon the terms of the bond, but upon the provisions of a rider attached to the bond, and also upon the language of the schedule of employees whose fidelity was insured. This schedule, as the court pointed out, made it plain that the fidelity of the employee was insured for a period ending on a definite date, and that it was for insurance for the period ending on that date that the annual premium was paid. The basis of the court's decision is shown by the following statements in the opinion on page 899 of 246 F.:

"That contract was what is known in the insurance business as a 'term policy,' under which the insurance contracted for covers only losses occurring before the expiration of the stated term. Further action of the parties, having the effect of creating a new contract, was required to make the defendant liable for any loss or losses occurring after January 10, 1914. * * *

"Rulings made in cases involving contracts which contained stipulations for renewals and such provisions as one stating that the named amount of insurance was to cover losses occurring during the continuance of the bond or any renewal thereof, or one stating that the liability of the insurer should not be cumulative, or one stating that the liability should not be for more than a stated sum, whether the loss occurred during the term of the policy or bond or a continuance thereof, or other similar provision, are not applicable to the facts of the instant case."

We find nothing in this case at variance with the conclusion which we have reached.

The judgment of the District Court is affirmed.