## FIDELITY & DEPOSIT CO OF MARYLAND v JONES

Ohio Appeals, 1st Dist, Hamilton Co

No 4944. Decided Jan 13, 1936

Nichols, Morrill, Wood, Marx & Ginter, Cincinnati, and A. J. Zanone, Cincinnati, for plaintiff in error.

Arthur C. Fricke, Cincinnati, for defendants in error.

### OPINION

By THE COURT

This is an action against a police officer of the City of Cincinnati and the surety upon his bond. The judgment in the Court of Common Pleas of Hamilton County, in which it was instituted, was against both. This proceeding in error is prosecuted by the surety. The judgment against the police officer was based upon an assault and battery and false imprisonment under color of his office, and its validity is not brought in question here.

The only question is whether the Fidelity and Deposit Company is liable as surety to respond to the judgment. It claims that it is not so liable for the reason that it has already responded to other judgments against the police officer in an amount in excess of the penalty in the bond.

On October 16th, 1927, the surety executed and delivered to the City of Cincinnati a bond in which the police officer was principal, by the terms of which it bound itself as surety to "the City of Cincinnati in the sum of $1000.00 to be paid to the said City of Cincinnati" upon condition that:

"The condition of the above obligation is such that whereas the said Clement Johnston was on the 16th day of October, 1927, duly appointed by the City Manager to the position of Regular Patrolman on the Police Force of the City of Cincinnati, Ohio.

"Now, therefore, if the said Clement Johnston shall faithfully discharge and perform all and singular the several duties pertaining to the aforesaid position on the Police Force of said City of Cincinnati, Ohio, during his continuance in said position and pay any and all damages that may be adjudged against him by any competent tribunal for the illegal arrest or imprisonment by him of any person, and shall pay all indebtedness which may have arisen against him in favor of the City of Cincinnati, from any cause whatsoever, and shall pay or cause to be paid any and all loss, costs or damage that may be occasioned by said Clement Johnston for the violation on his part of any law, ordinance or order given him, then the above obligation to be void, otherwise to remain in full force and effect."

Prior to that date Johnston had been a substitute patrolman, and on August 16th, 1927 had given a bond as such with the same surety. It seems that when he was appointed a regular patrolman, the bond of October 16th, 1927 was substituted for the bond previously given. Thereafter, in August of each year the surety sent statements for the annual premium of $10.00 to Johnston, who either paid or caused the city to

pay the amount to the surety. In any event it was the City that eventually bore the burden of the premiums, as it reimbursed Johnston when he paid the premium.

The record furnishes practically no information concerning the circumstances under which the bond was given or the premiums paid. Whether a contract, written or verbal, was entered into between the city and the surety for the assumption of liability by the surety, and, if so, what the terms of that contract were, we are not advised, other than that the city paid the premiums and the surety signed the bond, except the meager and contradictory evidence hereinafter referred to.

In 1931 two actions were filed against Johnston and the Fidelity & Deposit Company. These actions were filed by Otis Walden and Robert White, and were actions for damages based upon unlawful conduct by Johnston under color of his office. These actions remained pending until 1934, when a judgment for $500.00 in one case and $250.00 in the other, together with the costs, were rendered against Johnston and the Fidelity & Deposit Company. The bond dated October 16th, 1927 was introduced in evidence in those cases. In April, 1934, Fidelity & Deposit Company paid these judgments which totaled more than $1000.00, and, thereupon, by amended answer, it alleged these facts as a bar to any liability in this case.

The trial court was of the opinion, and so charged the jury, that the payment of the annual premiums entitled the City to indemnity for each year in the sum of $1000.00, and that liability incurred in any prior year or the satisfaction thereof, did not reduce or extinguish the indemnity. The jury returned a verdict for $250.00 against both defendants.

Two questions have been raised respecting the extent of the liability of this surety.

(1) The first relates to the effect of §11242 GC, upon the extent of such liability. We approve the construction placed upon the section in Southern Surety Co. v Bender, 41 Oh Ap 541, at 545 and 546: (11 Abs 602).

"Sec 11242, GC, relating to the liability of a surety in a suit on a bond, closes in the following language: 'A judgment for one delinquency shall not preclude the same or another person from bringing an action on the instrument for another delinquency.'

"The defendant contends that by virtue of this language a surety remains liable in succeeding suits on a bond, notwithstanding he may have paid on some former judgment the full amount of the penalty named in the bond. This court cannot so construe the statute. It is true that the purpose of the enactment was to make the surety liable in successive actions; but the limit of liability assumed by the surety in official bonds of this character is the penal sum named in the bonds. Any other construction would result in great injustice and render it practically impossible to obtain sureties.

"It is also true that the statute must be read into and construed as a part of the bond, but nothing in the statute or in the bond indicates that the surety obligated itself to one party, or to separate parties, for any amounts which, in the aggregate, exceed the penal sum named in the bond. Any different holdings are based upon the peculiar phraseology of the statute or of the bond."

(2) The second contention, (and the one adopted by the trial court) is that the surety by accepting an annual premium became liable, as stated in the brief of the defendant in error, "for the penal sum mentioned in its bond for each year that it remains on said bond."

It should be emphasized that the penal sum is fixed specifically at $1000.00, that there is no definite duration mentioned, but, on the contrary, the bond was given according to its terms as indemnity against failure to perform official duty of the patrolman "during his continuance in said position." The duration of the bond was as indefinite as the terms of office of the officer. Therefore, unaided by extrinsic evidence, there is but one bond and the penalty is $1000.00.

In State ex v New Amsterdam Co., (110 Okla. 23, 236 Pac. 603) 42 A.L.R. 829, it was held:

"When a bond guaranteeing the fidelity of an employee as to a specific duty, and not issued for a definite term, is renewed by the payment of the second annual premium on the contract, it is still only one contract and one penalty, and the receipt for the annual premium in renewal serves only to extend for a new period of time the indemnity provided by the original bond." [1]

The disclosed attending circumstances in that case are similar in most respects to those in the case at bar, and, after review-

ing the authorities on the subject, the court said at page 834:

"We conclude that the attaching of the annual premium claim to the schedule for the year 1917 did not operate to make a new contract; that there was only one contract in this case; and that the bond sued upon cannot be construed to make the surety company liable for more than the amount named therein."

As pointed out in the annotation to this case, the effect that the payment of the annual premiums has upon the limit of liability depends upon the interpretation of the terms of the particular bond under the attending circumstances. We find nothing in the terms of this bond indicating an intention to assume a total liability beyond $1000.00.

The remaining question is whether the record shows any attending circumstances that might affect the extent of the liability. In other words, is there anything in the record that might indicate that the parties intended by successive annual payments to, in effect, execute a new bond for each year, containing all the terms of the old bond excepting the date?

The only evidence we find on this subject is that of the deputy city auditor and his testimony is self-contradictory. At one point, he stated: "The term of the bond is from August 16th to August 16th of each year," implying that the bond was one for successive periods or that there were successive bonds. At another point he stated "That's a continuous bond," which seems to negative the successive terms of bonds.

This evidence, we believe, is entirely insufficient to support the verdict.

We have concluded, not however, without great hesitation, that there was sufficient evidence to justify the submission of the case to the jury, and that the case should be remanded for a new trial. A more complete development of the facts concerning the contracting for this bond by the city would enable the court to determine the extent of liability with greater assurance.

We find no other prejudicial error in the record.

For these reasons, the judgment is reversed, and the cause remanded for a new trial.

ROSS, PJ, and MATTHEWS, J, concur.

HAMILTON, J, concurring:

I am of the opinion that the law as to the effect of renewals, continuing the operation of bonds, such as is in question here, if intended as a renewal makes a separate and distinct obligation upon the payment of the premium for the renewal, depending upon the intention of the parties. See: Procter Coal Co. v U. S. Fidelity & Guaranty Co., 124 Fed. Rep. 424, and Campbell Milk Co. v U. S. Fidelity & Guaranty Co., 146 N. Y. S. 92.

The facts bearing on this question of intention and action of the parties are meager, and, for that reason, I concur in the judgment of reversal and a remand of the case.